

Fyke Farmer, of Nashville, Tenn. (Fyke Farmer, James W. Allen, and Farmer, Denney & Leftwich, all of Nashville, Tenn., on the brief), for petitioner.

Muriel Paul, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Helen Goodner, all of Washington, D. C., on the brief), for respondent.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Prior to January 21, 1937, the date not shown in the record, petitioner acquired an option from the Wrigley Estate of Chicago, Illinois, to purchase from it at $2 per share, 103,194½ shares of the common capital stock of the Tennessee Products Corporation. On the above date, petitioner entered into a contract with Paul M. Davis of Nashville, Tennessee, and Gray-Shillinglaw & Company, a Tennessee corporation, engaged in the brokerage business, wherein the corporation and Davis agreed to advance the money to pay for the stock. The 103,194½ shares of stock were shipped on February 2, 1937, to the Federal Reserve Bank at Nashville, Tennessee, with draft attached for $206,389, and the broker paid for the stock, and on that date caused 3,-194½ shares to be issued in the name of and delivered to petitioner which number of shares he was to receive outright under the contract. The remaining 100,000 shares were retained by the broker and reissued to Rockdale & Company, a street name. Under the terms of the contract, the 100,-000 shares were to be sold by the broker at the best price obtainable, but for not less than $6 per share and out of the proceeds of the sale, the broker was to be repaid its advancement for the purchase of the stock, with six percent interest thereon, the remainder of the sum realized to be divided, 40 percent to petitioner, 30 percent to Davis and 30 percent to the broker. At the end of six months, if a sufficient number of shares had not been sold to reimburse the broker, the petitioner and Davis were to pay to the broker in proportion to their interest, the balance due him and the unsold shares were to be divided 40 percent to petitioner, 30 percent to Davis and 30 percent to the broker.

After the six months provided by the contract had expired, petitioner demanded of the broker an accounting and settlement, and on such demand received 26,240 shares of the stock of the Tennessee Products Corporation and certain sale slips or memoranda showing the purchase by the broker for petitioner's account on February 2, 1937, of 43,194.5 shares of the stock at a cost of $1.9111 per share or a total of $82,250 and a sale for his account of 13,760 shares, also on the same date at $6 per share, or a total of $82,560. A memorandum slip was also sent petitioner showing the sale for his account as agent of the Tennessee Products Corporation of the 103,194½ shares of the

stock at $2 per share or for a total of $206,-389. On being advised by petitioner's attorney that he did not understand the explanation of the transaction contained in the memoranda slips and that petitioner was not to be considered as bound by the transaction and that no further agreement could be made until a proper detailed accounting had been furnished, a statement was then sent petitioner by the broker of his account in connection with the transaction which is found in the margin.[1]

Respondent determined that during the tax year 1937 petitioner had realized a taxable profit of $56,259.82 from the sale of 13,760 shares of the common stock of the Tennessee Products Corporation. It would seem, although not clearly shown from the Commissioner's deficiency letter, that the profit on the transaction was determined by using a cost base of the stock of $1.9111 per share and a sale price of $6.

On the facts substantially as we have outlined, the Tax Court sustained the respondent, hence this petition to review.

Petitioner contends there is no evidence in the record that he sold any of the shares of stock during the calendar year 1937 out of which the respondent found he had realized a profit.

It is apparent that the statements, memoranda and sale slips furnished by the broker to petitioner were prepared for the purpose of showing purely paper transactions. There is no proof that petitioner had actual knowledge of the entries contained in the broker's books or that he authorized such entries or caused them to be made. There is no evidence from which a legal presumption could be raised that petitioner had knowledge of the entries unless he is chargeable with such knowledge from the mere fact that he was a member of the joint venture engaged in the business of selling the stock. It may be that the broker's records were prepared for a sinister purpose and the entries were intended to conceal rather than reveal the truth as contended by petitioner, but that fact does not make them incompetent evidence. The general rules of law concerning the admission as contradistinguished from the sufficiency of evidence and the particular conclusions which a fact-finding body may draw therefrom, are two things which differ most essentially in their nature. Unless the distinction between relevancy and weight of evidence is kept in mind, confusion usually results. It may be that the broker's records, standing alone, were insufficient to support the Commissioner's determination and the Tax Court's decision, but the records were relevant to the issue. The duty of determining their weight as evidence was for the Tax Court.

The contract in question has all of the characteristics of a joint venture. The parties to it were engaged in a specific venture in which a profit was jointly sought. The assets acquired through their joint efforts were the property of the members and each was the agent for the other in carrying out the terms of the contract. It seems clear that the members of the syndicate were equitable owners of the personal property acquired and that the beneficial interest of no one of them was his personal claim against the joint enterprise as a separate entity. Looking at the case in this light,

---

[1] Statement of Account
Tennessee Products
Stock

| | | | |
|---|---|---|---|
| Account started with 100,000 shares at | | | $206,389.00 |
| To liquidate debt at $6. per share | | 34,398 shares | 206,389.00 |
| Leaving on hand | 65,602 shares | | |
| Of this 65,602 shares Mr. Leake to receive 40%, or | 26,240 shs. | | |
| Mr. Davis and associates to receive 60% or | 39,362 shs. | | |
| | 65,602 shs. | | |

On February 2, 1937, Mr. Davis and Associates added 7500 shs. to the above 34,398 shares, making a total of 41,898 shares which were sold through Gray, Shillinglaw & Company at an average net price of $4.93 per share, producing $206,389.00 necessary to pay off indebtedness. This sale may be verified through Gray, Shillinglaw's ledger sheets, which are subject to your inspection if necessary.

it appears that the members of the joint venture sold so many of the shares as was necessary to pay the original cost of the stock to the Wrigley estate. In any event, petitioner treated the transaction on that basis.

During the tax year 1937, petitioner sold 600 shares of the stock allotted to him, and reported these shares as having no cost. He had transferred to his wife 570 shares which were also sold and the gross sum received reported in income. Excluding the statement of the broker that 34,398 shares were sold to pay the cost of the stock, the record is barren of evidence of the detailed sales, but Gray, Shillinglaw & Company rendered a written statement to the petitioner that it had sold this number of shares at $6 per share and thus liquidated its contribution to the joint venture. This admission is binding on Gray, Shillinglaw & Company and is sufficient evidence to support the Tax Court's conclusion that the stock was sold at $6.

It is conceded by petitioner that the purchase price of the stock has been paid and that he has had distributed to him out of the assets of the joint venture 29,435½ shares. The Tax Court was authorized to draw such inferences of fact as might justly be drawn from the evidence and whether right or wrong, we need not decide. The duty of this court is discharged when, from an examination of the primary facts, we find that the Tax Court was justified in inferring that a part of the shares of stock representing petitioner's ownership in the joint venture were sold at $6 per share to pay the cost of all the shares which petitioner equitably owned.

The conclusion here reached is consistent with the realities of the transaction and is a practical application of the Revenue Statute. When it is remembered that income is stated in annual periods, it would be a distortion to construe the Revenue Act as permitting a taxpayer to sell part of a large block of stock, deduct the cost of the whole block in the year of the sale and report, without cost, the gain from the remaining shares as sold in small blocks each year. Fairness to both the taxpayer and the Government requires an allocation of the cost on a share basis, and the cost deducted from each share as sold for the purpose of determining gain or loss.

The decision of the Tax Court is affirmed.