ESTATE OF WILLIAM H. FOSTER, ST. JOSEPH VALLEY BANK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

L. MAE FOSTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8936, 8939.    Promulgated November 6, 1947.

*Verne G. Cawley, Esq.*, for the petitioners.
*Jackson L. Boughner, Esq.*, for the respondent.

932

**934**

ARNOLD, *Judge*: The sole issue here is the computation of the basis of stock sold in 1940. The parties are agreed as to part of the computation. They agree as to the basis of the shares owned by Foster on December 6, 1922, and as to the effect of some of the subsequent additions or transfers. They do not agree as to the effect of the transactions between Foster and Greenleaf upon the basis. The petitioners contend that there should be added to the basis as otherwise determined the amounts of $218,000 paid by Greenleaf to the corporation for 2,180 shares of common stock transferred to him by Foster, $80,000 for 800 shares of preferred stock transferred by Foster to the corporation and resold to Greenleaf, and $46,793.20, being part of the cost to Foster of 1,048 shares of preferred stock transferred by him to the corporation and canceled. The respondent contends that the addition to basis should be only the *cost* to Foster of the common stock transferred to Greenleaf. The respondent in the deficiency notice determined the basis of the 2,059.5 shares sold by William H. Foster to be $35,968.93 and of the 80 shares sold by L. Mae Foster to be $4,000, the original cost of such shares to William H. Foster. The parties now agree that, as a result of a cash contribution of $12,000 to the company by Foster, the basis of the shares he sold in 1940 should be increased by $8,303.04, and the basis of the shares sold by L. Mae Foster should be increased by $322.53. The respondent computes the basis of the 2,059.5 shares sold by W. H. Foster in 1940 as $43,271.97, and the basis of the 80 shares sold by L. Mae Foster as $4,322.53. The respondent concedes that the estate is entitled to deduct the full loss of $10,450 sustained in 1940 when two notes of the Elkhart Real Estate & Housing Corporation, totaling that amount and owned by William H. Foster, became worthless, rather than the loss of $5,225 allowed in the deficiency notice.

Generally, a payment by a stockholder to the corporation, made to protect and enhance his existing investment and prevent its loss, is a capital contribution, rather than a deductible loss, and should be added to the basis of his stock. He increases his capital investment and the determination of gain or loss is held in abeyance until disposition of some or all of his stock. *First National Bank in Wichita* v. *Commissioner*, 46 Fed. (2d) 283, affirming *W. R. Ranney*, 16 B. T. A. 1399; *B. Estes Vaughan*, 17 B. T. A. 620. On the other hand, when a stockholder surrenders a part of his stock to improve the financial condition of the corporation he sustains a deductible loss, measured by the basis of the stock surrendered, less the resulting improvement in value of the stock retained. *Commissioner* v. *Burdick*, 59 Fed. (2d) 395, affirming 20 B. T. A. 742; *Julius C. Miller*, 45 B. T. A. 292; *Peabody Coal Co.* v. *United States*, 8 Fed. Supp. 845.

The petitioners say that, as a result of the transactions between Foster and Greenleaf, Foster's holdings of stock were reduced by 2,180 shares of common and 1,848 shares of preferred, Greenleaf acquired 2,180 shares of common and 800 shares of preferred at a cost to him of $298,000, and the company's net worth was increased by $402,800. As to the common stock transactions, the petitioners contend that the legal effect is the same as if Foster had received $218,000 for the 2,180 shares transferred to Greenleaf and had then donated this amount to the company. This amount, they say, should be added to the basis of the shares remaining in his hands. They assert that had he not transferred these shares to Greenleaf, he could have sold them in 1940 for an additional $218,000. Their argument is that the transactions by which these funds were raised for the corporation amounted to an assessment against Foster's stock, the amount of which should be added to his basis.

The error in the petitioners' theory on this point is in assuming that Foster could have sold the 2,180 shares of common stock to Greenleaf, or anyone else, for $218,000 payable unconditionally to Foster. Foster was attempting to procure working capital for the corporation and was willing to surrender part of his control in order to get the necessary funds. Greenleaf was willing to invest in the corporation and to build it up financially in order to preserve and increase the value of the interest he was acquiring. He stipulated for equal control with Foster in the management. He was not interested in buying stock from Foster, as an investment in stock, but in investing in the business in which he was acquiring equal control. The original agreement called for his payment for the stock "only on condition that the amount paid therefor by him in cash be payable to the company." The 1927 agreement made him a creditor of the corporation as to the $113,000 advanced, with the option of accepting stock at par in discharge of the debt. These transactions did not resemble purchases from Foster. Although Greenleaf contributed to the corporation $218,000 in exchange for 2,180 shares of common stock, it is obvious that he would not have been willing to pay Foster that amount in an unrestricted sale. Foster, therefore, was never in a position to make a contribution of this $218,000 to the capital of the corporation. See *W. R. Ranney, supra,* and *B. Estes Vaughan, supra.* Therefore, we can not agree that the legal effect of these transactions is the same as if Foster had sold the stock and had himself contributed the proceeds to the company.

In *Commissioner* v. *Burdick, supra,* and *Julius C. Miller, supra,* the taxpayers surrendered part of their stock to the corporation and were allowed a loss deduction. In the *Miller* case the evidence established that the taxpayer, by surrendering part of his stock, enhanced the value

of the shares he retained. The Board concluded that the allowable loss should be measured by the cost of the stock surrendered ($20,000), less the amount by which the value of the remaining stock was improved ($10,178), and then commented:

The $10,178 of the $20,000 loss which petitioner claims, which is disallowed for the reasons above stated, will of course be added to the cost basis of petitioner's remaining stock in the shoe company and will be recovered by petitioner when his remaining stock is sold or otherwise disposed of.

Had Foster surrendered 2,180 shares to the corporation and the corporation sold them to Greenleaf at par, it appears that the effect of the whole transaction would be to improve the value of Foster's retained shares to the extent that no deductible loss resulted from that surrender. Thus, in accordance with the principle stated, the entire cost of the surrendered shares should properly be added to the basis of the retained shares.

Taking the facts as they are, the respondent has determined that Foster made a contribution to capital to the exent of the cost basis of the shares transferred to Greenleaf, and has included such contribution in the basis of the stock sold in 1940. We think this action was correct. Basis is, fundamentally, cost, and the cost of Foster's entire investment in common stock has been allocated by the respondent to the shares he retained. The petitioner's assumption that, if Foster has retained the 2,180 shares he could have sold them in 1940 for $218,000 more than he then received, is purely conjectural. It is quite as likely that but for Greenleaf's investment the company might not have survived and Foster's stock might have become worthless many years ago. As to the common stock transactions, we sustain the respondent.

The preferred stock transaction occurred in 1935. Foster then held 2,348 shares out of 3,315 preferred shares outstanding. He surrendered 1,848 shares, retaining 500. Of the surrendered shares, 1,048 shares were canceled, reducing the outstanding total to 2,267. The remaining 800 were transferred to Greenleaf and he paid in $80,000 to the company by surrendering bonds of $50,000 and canceling indebtedness of $30,000. The surrendered stock had cost Foster $184,800. The petitioners contend that there should be added to the basis of the common stock $80,000, the cost of the preferred shares sold to Greenleaf, and 2,232.5/5,000 of $104,800, or $46,793.20 on account of the canceled shares. This fraction represents the number of shares of common stock then held by Foster divided by the number of shares of common stock then outstanding.

The respondent would deny any addition to basis for the surrender by Foster of preferred stock because the petitioners have not shown how much, if any, of the cost of such stock should be added to the basis of the common stock, pointing out that the starting point in determin-

ing enhancement of remaining stock is net worth, and that the record contains no evidence of the net worth of the company on October 5, 1935.

While we have no balance sheets or similar evidence of the worth of the company in 1935 to show the value of the common stock, we have the facts of certain transfers of stock, both common and preferred. Foster bought preferred stock at par value of $100 per share in 1928 and 1929 and again in 1941. On October 1, 1935, he purchased 166 shares of preferred at par. Greenleaf accepted 800 shares of preferred on October 5, 1935, at par value in exchange for bonds and an open account. Foster paid more than par value for some common stock acquired in 1929. He sold 2,059.5 shares of common in 1940 at $100 per share. Greenleaf paid the company par value for the common stock he acquired before 1930. While these circumstances can not be taken as establishing the fair market value of the stock, they do, we think, sufficiently show that the common stock had value in October 1935, prior to the preferred stock transaction. The common shares having value, their worth was enhanced as a result of the elimination of $184,800 in obligations and preferred stock having priority over the common stock. This $184,800 by which the net worth of the corporation was increased amounts to $36.96 per share of the common stock outstanding. Under the facts and circumstances here present and in the absence of better evidence, we are of the opinion that as a result of the preferred stock transaction the value of the common stock outstanding was enhanced by $36.96 per share.

When Foster surrendered 1,848 shares of the preferred stock he parted with property which had cost him $184,800. Under the principle of the *Burdick* and *Miller* cases, *supra*, he then sustained a loss which would be ascertained by deducting from the cost of the property surrendered the resulting enhancement in the value of the common stock he then held. The enhancement in the value of the 2,232.5 shares he then owned, at $36.96 per share, was $82,513.20. This part of the cost of the surrendered preferred stock, which was not allowable as a loss deduction because it inured to the benefit of his own common stock, properly becomes a part of the basis of these common shares to be taken into consideration on their final disposition. He disposed of some of these shares before 1940 and the part of this addition to basis allocable to them went with them. The addition resulting from this transaction allocable to the basis of the 2,059.5 shares sold in 1940, at $36.96 per share, was $76,119.12. The addition allocable to the 80 shares given to L. Mae Foster and sold by her in 1940 was $2,956.80.

Accordingly, we have found that the basis of the shares sold in 1940 includes, in addition to the original cost of such shares and the

stipulated addition resulting from Foster's contribution of $12,000, the cost to Foster of the common shares transferred to Greenleaf and the part of the cost of the preferred stock surrendered in 1935 in excess of the amount deductible as a loss at that time.

Reviewed by the Court.

*Decision will be entered under Rule 50.*