**Henry C. TILFORD, Jr. and Barbara N. Tilford, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 81–1447.**

United States Court of Appeals,
Sixth Circuit.

Argued July 26, 1982.

Decided April 20, 1983.

Rehearing and Rehearing En Banc
Denied May 27, 1983.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Frank P. Cihlar (argued), Tax Div., Dept. of Justice, Jerome D. Sebastian, Acting Chief Counsel, Kenneth W. Gideon, Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.

H. Wayne Grant, Grant, Clements & Konvalinka, Howell G. Clements and John P. Konvalinka (argued), Chattanooga, Tenn., for petitioners-appellees.

Before EDWARDS, Chief Circuit Judge, JONES, Circuit Judge and NICHOLS,* Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Circuit Judge.

This is an appeal by the Commissioner of the Internal Revenue Service from a Tax Court decision that held an IRS regulation invalid and by so doing, permitted the taxpayer to take substantial capital loss deductions.

The facts indicate that taxpayer Henry Tilford was the principal officer and share-

* Judge Nichols was an Associate Judge of the United States Court of Claims when this case was argued. He was sitting by designation. On October 1, 1982, he became a member of the newly created United States Court of Appeals for the Federal Circuit, with the title of Circuit Judge, by various provisions of Pub.L. No. 97–164.

holder of a company called Watco. He had invested $350,000 in the company stock, thereby owning all of Watco's 170,000 issued shares, and had advanced an additional $79,500 in loans by the end of 1970. Seeking to motivate a number of employees, he "sold" approximately 133,000 of these shares to said employees, each block of stock being priced at $1.00 but with an agreement by which he reserved the right of first refusal to himself to repurchase the stock at book value in the event the employee concerned left Watco employment. The company failed and plaintiff, as employees left, repurchased the stock which had been issued to them.

In his personal tax returns for the years 1971, 1972 and 1973, Tilford claimed losses from the original sales of stock. He took deductions in amounts of $370,992, $150,497 and $159,246, respectively for those years.

The Revenue Service disallowed these deductions claiming they were transfers of property in connection with the performance of services and hence contributions to Watco's capital under section 83 of the Internal Revenue Code. The Tax Court reversed and found for the taxpayer. It reasoned that the treasury regulation on which IRS relied is outside the scope of section 83 and held that Tilford was entitled to his claimed capital loss deductions. Six Tax Court judges dissented. The Revenue Service appeals to this court.

The case involves consideration of a Tax Court case upon which the majority of the Tax Court relied, *Downer v. Commissioner,* 48 T.C. 86 (1967), and another Tax Court decision *Smith v. Commissioner,* 66 T.C. 622 (1976). The *Smith* case was subsequently reversed by the Fifth Circuit under the name *Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir.1979), with Judge Tuttle writing for the court. *See also Deputy v. Dupont,* 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) and *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

The applicable subsection of the IRS Code is section 83(h):

**(h) Deduction by employer.**—In the case of a transfer of property to which this section applies or a cancellation of a restriction described in subsection (d), there shall be allowed as a deduction under section 162, to the person for whom were performed the services in connection with which such property was transferred, an amount equal to the amount included under subsection (a), (b), or (d)(2) in the gross income of the person who performed such services. Such deduction shall be allowed for the taxable year of such person in which or with which ends the taxable year in which such amount is included in the gross income of the person who performed such services.

We note at the outset that section 83(h) was adopted by Congress in 1969 after the decision of the *Downer* case and with apparent intention on the part of the Congress to embrace a theory contrary to the one underlying the *Downer* case.

The Internal Revenue Service, after Congress adopted section 83(h), interpreted it and the congressional intent in enacting it by adopting 26 C.F.R. § 1.83–6(d). This regulation reads:

**(d) Special rules for transfers by shareholders—(1) Transfers.** If a shareholder of a corporation transfers property to an employee of such corporation or to an independent contractor (or to a beneficiary thereof), in consideration of services performed for the corporation, the transaction shall be considered to be a contribution of such property to the capital of such corporation by the shareholder, and immediately thereafter a transfer of such property by the corporation to the employee or independent contractor under paragraphs (a) and (b) of this section. For purposes of this (1), such a transfer will be considered to be in consideration for services performed for the corporation if either the property transferred is substantially nonvested at the time of transfer or an amount is includible in the gross income of the employee or independent contractor at the time of transfer

under § 1.83–1(a)(1) or § 1.83–2(a). In the case of such a transfer, any money or other property paid to the shareholder for such stock shall be considered to be paid to the corporation and transferred immediately thereafter by the corporation to the shareholder as a distribution to which section 302 applies.

Treas.Reg. § 1.83–6(d) (1978).

This regulation appears to us to be consistent with both the legislative history and statutory intent of section 83(h).

The report of the Senate Finance Committee which added section 83(h) to the bill which had already passed the House explained:

> In general, where a parent company's or a shareholder's stock is used to compensate employees under a restricted stock plan, the transfer of the stock by the parent company or shareholder is to be treated as a capital contribution to the company which is to be entitled to a deduction in accordance with the restricted property rules. The parent company or the shareholder merely is to reflect the contribution as an increase of the equity in the company which is entitled to the compensation deduction.

Tax Reform Act of 1969, S.Rep. No. 91–552, 91st Cong., 1st Sess. at 123–24, 1969–3 Cum. Bull. 500, 502, U.S.Code Cong. & Admin. News 1969, 1645, 2155.

This language is entirely consistent with much earlier tax law interpretation written by the Supreme Court of the United States in *Deputy v. Dupont,* 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) and *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed.2d 1607 (1943). Both cases held that payments made by a stockholder for the benefit of his corporation are not deductible by the stockholder.

Judge Simpson's interpretation of the statute and the regulation in his dissent (joined by three other judges) is, we think, illustrative of the legislative purpose:

> Usually, when we have a vexing question of statutory interpretation, we are faced with a problem not anticipated during the development of the legislation, and we are unable to ascertain the treatment which Congress would have intended if it had considered the matter. Not so in this case. Here, the legislative purpose is indisputable, and the regulations undertake to carry out that purpose. The majority quibbles with the way Congress undertook to express its purpose, and because it did not set forth all the intended rules in the statute itself, the majority proposes to disregard the clearly manifested legislative purpose.

> When Congress decided to legislate with respect to the tax treatment of bargain sales of property to persons rendering services, it recognized that in addition to sales by an employer to an employee, it needed to provide rules broad enough to cover other compensatory sales of property. Thus, section 83(a), which governs the taxability of the recipient of the property, applies "If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed." Thus, the rule applies to any compensatory transfer, not merely to a transfer to an employee. It includes a sale made by a parent or shareholder of the employer corporation to an employee of such corporation.

> By describing the recipient of the deduction as "the person for whom were performed the services," it is clear that Congress had in mind situations where the transferor would be a person other than the employer; there would have been no need to use such convoluted language if Congress had meant merely to cover a bargain sale by an employer to an employee. The committee report reinforces that view. S.Rept. 91–552 (1969), 1969–3 C.B. 423, 500–502.

> In deciding whether a deduction is to be allowable in such situation, and to whom, the draftsmen no doubt had in mind the various views of the transaction that could be taken: when a shareholder sells his stock to an employee of the corporation, it could be viewed as a simple sale (*Downer v. Commissioner,* 48 T.C. 86

(1967)); under that view, there would be a capital transaction giving rise to gain or loss, but there would be no transfer of compensation taxable to the employee and deductible by either the transferor or the employer. *Deputy v. du Pont, supra.* In the alternative, the transaction could be viewed as a transfer of stock to the corporation and a transfer of such stock by the corporation to the employee. Since the statute allows a deduction for compensation, the statute makes clear that Congress rejected the view that the transaction was merely a sale by a shareholder to an employee.

Having decided to tax the employee on the receipt of compensation and to allow the corporation a deduction for that payment thereof, the draftsmen went on to explain in the committee report the theory on which such treatment was based; that is, the parent or shareholder is considered to have made a contribution to the capital of the corporation.

*Tilford v. Commissioner,* 75 T.C. 134, 154–56 (1980) (Simpson, J., dissenting).

For the reasons set forth above and further explicated by Judge Tuttle in *Schleppy v. Commissioner, supra,* we hold that the majority opinion of the Tax Court in this case is erroneous as a matter of law and hence must be reversed.

NICHOLS, Circuit Judge, dissenting:

Respectfully, I dissent. I appreciate we have a difficult question. A treasury regulation is entitled to judicial deference unless it clearly misconstrues the statute it ostensibly interprets. I have respect for the Tax Court dissenters as well as the majority there and here, but I think the dissenters and our panel overlook a vital consideration which was obviously much in the mind of the Tax Court majority, namely, how far Congress can effectively go in enacting legislation by means other than bills passed by both Houses and placed before the President for his signature or veto?

The author of the Tax Court majority opinion, Honorable Leo Irwin, was a chief counsel of the House Ways and Means Committee for 14 years (see Congressional Directory, 1981 ed. at 741), and is entitled to special deference when he touches in an opinion, as he does here, upon transactions in the Congress.

I am sure the court will agree there would have been no regulation but for the so-called legislative history. The regulation was issued only in 1978, as Judge Irwin points out, and so is not contemporary with the legislation to be construed: actually it was finalized after the trial and briefing in this case. This reduces the deference to which the regulation would otherwise be entitled. The legislative history is the key to the case. The IRS Commissioner hardly can ignore the kind of pronouncement made in the Report of the Senate Finance Committee on the Tax Reform Act of 1969, S.Rep. No. 91–522 (1969) 1969–3 C.B. 500, 502, as quoted by the court, *supra.* But for that statement I do not think it would ever have occurred to anyone that legislation dealing with income and deductions of other taxpayers, § 83, implicitly denies a deduction to a taxpayer that statute never mentions, to which he would otherwise be entitled. The suggestion is made that the convoluted language of § 83(h) indirectly indicates such an intention. The Tax Court is in a better position than we are to appreciate whether the Congress normally grants or withdraws deductions in such an arcane and cryptic manner.

The Committee Report is in my view ambiguous whether the legislative command there unambiguously stated derives its authority from—

(1) The requirements of prior law, as construed by the Committee,

(2) The requirements of the reported bill, as construed by the Committee, or

(3) The command of the Senate Finance Committee itself.

My experience on the Hill is much inferior to Judge Irwin's. However, such as it is, it leads me to adopt explanation (3) as the correct one. The objections to (1) and (2) are compelling. If the Committee had intended (1), surely it would have explained how existing law so required. But in any

case, the Committee's interpretation of prior law, though worthy of respectful consideration, is nowhere near as compelling on courts as its interpretation of the bill reported. If the Committee is in error about prior laws, courts are free to say so.

On the other hand, explanation (2) founders on the utter absence of congruity between the language of the bill and the language of the report. The latter deals with a subject the former never touches. It would seem any report draftsman, aware of the Committee's wishes, would not state them in the report without a glance at the bill. Making such a glance, he would perceive the absence of anything in the bill to match his statements about it, and he would leap to correct the deficiency in the bill. Or would he? The legislative situation could make it difficult to amend the bill without endangering other purposes deemed more important, perhaps its passage in that session. There might be a temptation to try to put across a Committee command.

At any event, in support of the probability of (3) that the statement in question is a Committee command, everyone who has dealt with congressional committees knows that their reports, when made, are replete with Committee commands. They expect this, they require that, they disapprove of the other, and it must not be done. I suppose members and staff are all aware, when they think about it, that such Committee commands are of dubious legal authority. As a practical matter they are usually effective because addressed to persons who cannot afford to incur Committee wrath. The "legislative history" here involved is of course really addressed to the IRS Commissioner, who is commanded to try to put it across, and if he fails, that will occur many years hence, and besides, the wench will be dead. It will also be, though, the same country. (*Cf.* Christopher Marlowe.)

This may seem like an improbable scenario, and doubtless it is, but Conan Doyle's writings about Sherlock Holmes teach that, when all explanations of an occurrence are improbable, the more improbable ones must be rejected, and the least improbable accepted as true.

Judge Irwin expresses his appreciation of the situation in a more diplomatic manner, but as I read him, he perceives it as I do. He cannot see how the "legislative history" has any credibility or plausibility, other than as a Committee command. It follows that one must and I do conclude that the Finance Committee wanted very much for the stockholder to be required for tax purposes to treat as a capital contribution to the corporation the stock he distributed to employees to retain them in corporate employ. The only trouble is the Committee failed to embody its wishes in an enacted bill. If this failure is not decisive of the case before us, the Committee is potent indeed.

I have not attempted to collect all the decisions dealing with this problem of statutory construction, which has become acute so recently, and of which even the capable counsel in the case before us may not be wholly aware. They did not cite one case which I deem to be a striking parallel. It is an *en banc* decision of the old Court of Claims, now defunct. *Hart v. United States,* 218 Ct.Cl. 212, 585 F.2d 1025 (1978), dealing with an earlier Revenue Act, that raised issues so complex I will not attempt to explain them. There were committee reports embodying a legislative command not stated in the bill reported, clearly or ambiguously. There was an obedient IRS Regulation. Reference is made to the discussion in that case and to the cases there cited. I will quote a few sentences, 218 Ct.Cl. at 231, 585 F.2d at 1035:

We could hope for beneficial results, too, if this case should lead congressional committees to write corrective legislation when they perceive errors in statutes, rather than make bold [bald?] assertions in committee reports, in the hope they will be accepted as valid legislative history. People are entitled to find in the statute books the laws that govern them.
\* \* \*