**Peter R. FINK; Karla S. Fink,
Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

**No. 84–1806.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 25, 1985.

Decided April 30, 1986.

Joiner, Senior District Judge, sitting by designation, filed a dissenting opinion.

* The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern Dis-

Mark K. Wilson Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich. Timothy John Smith, argued, for petitioners-appellants.

Fred T. Goldberg, Jr., Cheif Counsel, Robert P. Ruwe, Glenn L. Archer, Jr., Michael L. Paup, David Pincus, argued, Asst. Atty. Gen. Tax Div. Appellate Section Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges, and JOINER, Senior District Judge *.

MILBURN, Circuit Judge.

Peter R. Fink and Karla S. Fink ("taxpayers") appeal from a decision of the United States Tax Court determining deficiencies in taxpayers' federal income taxes for 1976 and 1977. The taxpayers claimed that their non-pro rata surrender of stock to the issuing corporation entitled them to an ordinary loss under section 165 of the Internal Revenue Code (the "Code"), 26 U.S.C. § 165. The Tax Court held that a non-pro rata surrender of shares to the issuing corporation to improve its financial position is not an event that permits the recognition of loss and constitutes, instead, a contribution to the corporation's capital. For the reasons that follow, we reverse.

trict of Michigan, sitting by designation.

## I.

Taxpayers were the principal stockholders of Travco Corporation. Throughout the 1970's, the largest part of Travco's business involved the manufacture and sale of motor homes, recreational vehicles, and their component parts. The energy crisis of 1973 and 1974 caused a decline in the market for motor homes and recreational vehicles, resulting in a decline in earnings and a weakening of Travco's financial condition.

At the time of the energy crisis and following, Travco enjoyed a line of credit with Manufacturers National Bank of Detroit of $3,000,000 to $3,400,000. Because of Travco's weakened financial condition, Manufacturers National became concerned about Travco's ability to repay its borrowings. During 1976 Manufacturers National put pressure for repayment upon Travco. Travco's attempts to obtain new capital were unsuccessful, and late in 1976 Travco entered into negotiations with a new lender, City National Bank of Detroit. As a condition of extending credit, City National required Travco to obtain $900,000 of new capital, $700,000 of equity and $200,000 of subordinated debt.

On December 22, 1976, Mr. Fink surrendered to Travco 116,146 shares of Travco's common stock having a total basis of $197,-781.64. Mrs. Fink surrendered to Travco 80,000 shares of Travco common stock having a total basis of $191,257.61. No other shareholders surrendered any shares.

The purpose of the stock surrender was to improve Travco's financial position, to preserve its business, and to increase the attractiveness of the corporation to outside investors. The number of shares surrendered to the corporation was calculated to reduce the number of outstanding shares below 1.4 million and thus allow a new investor to acquire control of Travco by investing $700,000 in new $1.00 par value preferred stock convertible into 1.4 million shares of Travco common.

Prior to offering the new preferred stock to Travco's shareholders, Travco's directors passed a resolution authorizing the issuance of preferred stock to Mr. Fink, Mrs. Fink and Elise Fink (Mr. Fink's mother), if the other shareholders declined the offer. On February 25, 1977, after being unable to sell the stock to other persons, Travco sold $700,000 of its convertible preferred stock to Mr. and Mrs. Peter R. Fink and Elise M. Fink, and $200,000 of subordinated indebtedness to the same stockholders.

On their 1976 joint return, taxpayers claimed an ordinary loss of $197,781.64, representing the basis of the 116,146 shares of Travco stock surrendered by Mr. Fink. On their 1977 joint return, taxpayers claimed as a miscellaneous deduction an ordinary loss of $191,257.61, representing the basis of the 80,000 shares of Travco stock that Mrs. Fink surrendered to the corporation. The Commissioner disallowed the claimed deductions, and the Tax Court affirmed.

In the Tax Court, the taxpayers relied on a long line of cases, culminating in *Smith v. Commissioner*, 66 T.C. 622 (1976), *rev'd sub nom. Schleppy v. Commissioner*, 601 F.2d 196 (5th Cir.1979), holding that a shareholder's non-pro rata surrender of stock to the issuing corporation results in an immediate ordinary loss. Following the Fifth Circuit's reversal of *Smith* in *Schleppy*, the Tax Court, in *Frantz v. Commissioner*, 83 T.C. 162 (1984), *aff'd*, 784 F.2d 119 (2d Cir.1986), overruled its prior line of cases and held that a non-pro rata stock surrender should be treated as a non-deductible contribution to capital. In the instant case, the Tax Court held in favor of the Commissioner on the basis of *Frantz*.

## II.

In *Frantz*, the taxpayer owned 65% of the common stock and 13% of the preferred stock of Andree Biallot, Ltd. ("ABL"). In an effort to attract outside investors, the taxpayer contributed to the corporation his ABL preferred stock and his notes and accounts receivable representing debts owed him by ABL. This transfer was made without a proportionate surrender by other stockholders. Taxpayer claimed an

ordinary loss deduction in the amount of the basis in the stock. The Commissioner disallowed the loss, and the Tax Court affirmed. *Frantz* held that a non-pro rata surrender of shares to the issuing corporation to improve its financial position should be characterized as a contribution to capital resulting in the basis of the surrendered shares being added to the basis of the shares retained.

In *Frantz* the Tax Court determined the crucial question to be "whether the surrender constitutes a loss 'incurred in any transaction entered into for profit' within the meaning of section 165(c)(2)." 83 T.C. at 179. The Tax Court recognized that resolution of this issue required it to decide which of two competing views of stock ownership was applicable to this situation. Under the *"fragmented view"* of stock ownership each share of stock is considered a separate investment. A shareholder who surrenders shares to the issuing corporation is considered to have finally disposed of the particular shares surrendered. The surrender of the shares closes the transaction, and the shareholder is entitled to an immediate ordinary loss. *See Frantz,* 83 T.C. at 180. Under the *"unitary view"* of stock ownership the "stockholder's entire investment is viewed as a single indivisible property unit." *Frantz,* 83 T.C. at 188 (Parker, J., dissenting). The surrendering shareholder is recognized as having surrendered stock for the benefit of stock retained. The transaction remains open, and the surrendering shareholder must add the basis of the surrendered shares to the basis of the stock retained. *Frantz,* 83 T.C. at 180–81.

*Frantz* adopted the *"unitary view"* of stock ownership and concluded that the stock surrender did not constitute a loss event under section 165(c)(2) because there was no "closed transaction." According to *Frantz,* a non-pro rata stock surrender constitutes an open, non-taxable transaction in the nature of a capital contribution. Thus, whether the taxpayer suffered a recognizable loss could not be determined until there was a disposition of the retained shares. The Tax Court stated its decision as follows:

> This conclusion ... necessarily follows from a recognition of the purpose of the transfer, that is to bolster the financial position of [the issuing corporation] and, hence, to protect and make more valuable petitioner's retained shares, and a consequent inability to fit the transaction within the statutory language authorizing a deduction for "losses incurred in any transaction entered into for profit."

83 T.C. at 181.

Relying on *Schleppy,* the Second Circuit affirmed the Tax Court's decision in *Frantz. Frantz v. Commissioner,* 784 F.2d 119 (2d Cir.1986). The court upheld treatment of the taxpayer's non-pro rata surrender as a non-deductible capital expenditure "[b]ecause the overall change in the taxpayer's interest in [the corporation] was miniscule compared with the taxpayer's retained interest in the company." *Frantz,* at 125. The court, however, cautioned that its holding "should not be construed as governing surrenders by a stockholder of more substantial equity interests that could truly be viewed as resulting in an immediate loss." *Frantz,* at 126.

Prior to *Frantz,* the Tax Court consistently held that non-pro rata stock surrenders gave rise to an immediate ordinary loss. *See, e.g., Smith v. Commissioner,* 66 T.C. 622, 650 (1976); *rev'd sub nom. Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir.1979); *J.K. Downer v. Commissioner,* 48 T.C. 86, 91 (1967); *Estate of Foster v. Commissioner,* 9 T.C. 930, 934 (1947); *Miller v. Commissioner,* 45 B.T.A. 292, 299 (1941). In *Foster* the Tax Court stated the general rule that "when a stockholder surrenders part of his stock to improve the financial condition of the corporation he sustains a deductible loss, measured by the basis of the stock surrendered, less the resulting improvement in the value of the stock retained." 9 T.C. at 934. In *Downer* the Tax Court held that a taxpayer's transfer of a portion of his stock to an employee of the corporation for the purpose of inducing the employee to render

services to the corporation resulted in an immediate deductible loss. 48 T.C. at 91. The decisions in *Downer* and *Foster* were premised on the *"fragmented view"* of stock ownership and both decisions explicitly refused to characterize the transfers as contributions to capital. *Downer,* 48 T.C. at 91; *Foster,* 9 T.C. at 934. In *Smith* the Tax Court reaffirmed its holdings in *Foster* and *Downer.* The Tax Court stated:

> It is well established that where a stockholder of a corporation surrenders some of his stock holdings to such corporation without consideration and such transfer results in a change of his proportionate ownership interest in that corporation, the stockholder is not treated as having made a contribution to capital but realizes any loss occasioned upon the surrender of such shares.

66 T.C. at 647.

In overruling its prior cases, the Tax Court relied on the Fifth Circuit's decision in *Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir.1979), *rev'g Smith v. Commissioner,* 66 T.C. 622 (1976), and this court's decision in *Tilford v. Commissioner,* 705 F.2d 828 (6th Cir.), *cert. denied,* 464 U.S. 992, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983). In *Tilford* the shareholder of a corporation transferred stock to employees for the purpose of inducing them to accept or continue employment. The Commissioner disallowed the claimed capital loss deductions and treated the transfers as capital contributions under Treas.Reg. § 1.83–6(d). Section 83(h) of the Code provides that in the event of a transfer of property which is subject to section 83, "there shall be allowed as a deduction under section 162, to the person for whom were performed the services in connection with which such property was transferred...." Treas.Reg. § 1.83–6(d) states in part:

> If a shareholder of a corporation transfers property to an employee ... in consideration of services performed for the corporation, the transaction shall be considered to be a contribution of such property to the capital of such corporation by the shareholder, and immediately thereafter a transfer of such property by the corporation to the employee....

Unlike the instant case, the sole issue in *Tilford* was the validity of the Commissioner's interpretation of section 83(h) as set forth in Treas.Reg. § 1.83–6(d). Resolution of the issue hinged upon language found in the report of the Senate Finance Committee on the Tax Reform Act of 1960:

> In general, where a parent company's or a shareholder's stock is used to compensate employees under a restricted stock plan, the transfer of stock by the parent company or the shareholder is to be treated as a capital contribution to the company which is to be entitled to a deduction in accordance with the restricted property rules.

The Tax Court concluded that section 83(h) was an income provision and that it did not address itself to the tax consequences to a stockholder who provides shares used in a restricted stock plan. Therefore, the Tax Court found Treas.Reg. § 1.83–6(d) outside the intended scope of the legislation. We, however, reversed the Tax Court and found Treas.Reg. § 1.83–6(d) consistent with the stated legislative purpose of section 83(h).

In *Schleppy,* the Fifth Circuit reversed the Tax Court's decision in *Smith* and held that the non-pro rata surrender of stock to improve the financial condition of the corporation did not result in an immediate ordinary loss to the taxpayers. The court concluded that the basis of the taxpayers in the shares surrendered should be added to their basis in their remaining shares. 601 F.2d at 199. *Schleppy* found that there was no loss " 'incurred in any transaction entered into for profit' " recognizable under section 165(c)(2). 601 F.2d at 199. *Schleppy* observed that "voluntary payments by a stockholder to his corporation in order to bolster its financial position cannot be claimed as a loss." 601 F.2d at 197. The court then wrote that it perceived no distinction between a shareholder paying cash to the corporation and a shareholder surrendering part of his shares to bolster the financial health of the corporation. *Id.*

The court in *Schleppy* criticized the Tax Court's reliance on the decisions in *Foster* and *Downer*. *Schleppy* interpreted *Foster* as holding that a shareholder's non-pro rata surrender of shares to the issuing corporation requires the basis of the surrendered shares to be added to the basis of the stock retained. 601 F.2d at 198. *Schleppy* distinguished *Downer* as involving a stock transfer to a third party and as requiring recognition of a loss where the surrender results in a significant reduction in the shareholder's percentage of ownership in the corporation. *Id.* The shareholder's ownership in *Downer* decreased from 66.67 percent of the shares to just over 50 percent, whereas in *Smith* the shareholder's ownership decreased from 70.12 percent to 68.57 percent. *Id.*

In further support of its adoption of the *"unitary view,"* *Frantz* suggested that the transaction entered into for profit began when the shares were surrendered. The Tax Court asserted that the profit sought was the increase in the value of the taxpayer's remaining stock investment. 83 T.C. at 181. Because it could not be determined whether the stock surrender would decrease or increase the value of the overall investment until the retained shares were disposed of, *Frantz* concluded that the transaction was not closed and that the taxpayer had realized no loss. *Id.*

*Frantz* also noted that its prior position would encourage "conversion of eventual capital losses into immediate ordinary losses." Section 165(g) provides that a security which becomes worthless during the taxable year will be treated as a loss from the "sale or exchange" on the last day of the taxable year. *Frantz* reasoned that a shareholder in a corporation on the verge of failure could avoid the section 165(g) limitations by surrendering the stock before it became valueless. 83 T.C. at 182. The Tax Court concluded that if its prior position were permitted to stand, the result would be "the practical equivalent of a judicial repeal of section 165(g)." *Id.*

## III.

The Tax Court's "open transaction analysis" in *Frantz* is analytically sound only if we adopt a *"unitary view"* of stock ownership. 83 T.C. at 188 (Parker, J., dissenting). However, this court, like the Tax Court, has previously adhered to the *"fragmented view"* of stock ownership in determining the basis of stock sold or exchanged. *See Curtis v. United States,* 336 F.2d 714 (6th Cir.1964); *Leake v. Commissioner,* 140 F.2d 451 (6th Cir.1944), *cert. denied,* 323 U.S. 722, 65 S.Ct. 54, 89 L.Ed. 580 (1944). In *Leake* this court stated: "Fairness to both the taxpayer and the Government requires the allocation of cost on a share basis, and the cost deducted from each share as sold for the purpose of determining gain or loss." *Leake,* 140 F.2d at 453. Moreover, the tax law generally reflects a "fractional, divisible view of property, seeking to allocate basis and recognize gain or loss immediately when a larger part of the property is disposed of." *Frantz,* 83 T.C. at 189 (Parker, J., dissenting). *See also* Treas.Reg. § 1.61–6(a) (1960); *Byram v. Commissioner,* 555 F.2d 1234, 1235 (5th Cir.1977); *Fasken v. Commissioner,* 71 T.C. 650, 655–57 (1979).

We do not believe that the facts of the instant case present sufficient justification for abandoning the *"fragmented view"* of stock ownership, a principle firmly rooted in the tax law and in this court's decisions. Each share of stock represents a permanent proprietary ownership or equity interest in the corporation. B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders,* ¶ 14.31 (4th ed. 1979). The holder is entitled to a variety of rights, such as the right to receive dividends, the right to share in corporate assets on dissolution, and the right to vote on corporate matters. *Id.* With a non-pro rata surrender of stock, these rights are relinquished, and the shareholder's proportionate ownership interest is reduced. *Downer,* 48 T.C. at 91; *Frantz,* 83 T.C. at 189 (Parker, J., dissenting). Consequently, the surrendering shareholder suffers an immediate loss. The shareholder will enjoy a smaller share of any future increase in

corporate value. Moreover, any future income the shares would have earned through dividends or on liquidation is lost. The shareholder has incurred an economic loss that will not be fully accounted for by the increased basis of the retained stock.

Under the *"unitary view,"* a non-pro rata surrender can only result in an ascertainable gain or loss when the stockholder has disposed of his remaining shares. Under this analysis, a shareholder who disposes of his shares at a gain, to enhance the value of his remaining stock investment, must postpone his recognition of that gain by reducing his basis in the remaining shares. He cannot have a cognizable gain because his disposition does not result in a "closed transaction." In light of the potential for abuse, it is doubtful that Congress would be willing to indefinitely delay recognition of gain on such a transfer. *Frantz*, 83 T.C. at 188. (Parker, J., dissenting).

The Second Circuit in *Frantz* and the Fifth Circuit in *Schleppy* adopted the "unitary view" of stock ownership because the shareholders incurred only a minimal reduction in their percentage of ownership as a result of the surrender. The courts speculated that the shareholders' net equity positions would not be substantially reduced after taking into account the increased value of the retained shares. *Frantz*, at 124; *Schleppy*, 601 F.2d at 198. However, both courts indicated their willingness to allow an immediate ordinary loss where the surrender results in an impact of some undefined magnitude on the shareholders' interest in the corporation. *Frantz*, at 125; *Schleppy*, 601 F.2d at 198. This reasoning addresses the size of the loss, not the question of recognition, and implicitly recognizes that the value of the surrendered shares may not be fully absorbed by the retained shares. Moreover, this approach fosters uncertainty and will produce "much future litigation over the magnitude of impact of particular surrenders of stock." *Frantz*, at 127 (Winter, J., concurring).

Adoption of the *"unitary view"* is not supported by the suggestion by the Tax Court in *Frantz* and by the Fifth Circuit in *Schleppy* that the transaction entered into for profit began when the shares were surrendered, not when the shares were originally purchased. This reasoning ignores the well-settled principle that the profit objective for purposes of section 165(c)(2) is determined when the property is acquired. *See* B. Bittker, *Federal Taxation of Income, Estates and Gifts*, ¶ 25.3 (1981). Judge Parker, dissenting in *Frantz*, wrote:

> Generally, the requisite profit objective for dealings in property is established (or not established) when the property is acquired. [citation omitted] The discussion of the taxpayer's reasons for surrendering the stock—enhancing the value of the corporation and hence the value of his remaining shares—is to negate the Government's argument that the surrender was a gift. [citation omitted] Once the taxpayer has disproved [the Commissioner's] claim that the stock surrender was for personal ... reasons, the profit objective of his initial stock acquisition characterizes its disposition.

83 T.C. at 190. If the courts in *Schleppy* and in *Frantz* had followed the well-established *"fragmented view,"* the transactions would have been closed at the time of the surrender and would have fit squarely within section 165(c)(2).

While we share in the Tax Court's concern for the prevention of sham transactions, we do not believe that our continued adherence to the *"fragmented view"* will effectively nullify section 165(g). As Judge Parker noted, the judiciary has developed numerous tests for tax evasion that can be applied to a stock surrender. *Frantz*, 83 T.C. at 192. The traditional tax common law doctrines, such as substance over form, sham transaction, step transaction and the business purpose rule, are sufficient to prevent any abuses that arise. *Id.* Moreover, the burden is on the taxpayer to prove the "bona fides" of the stock surrender.

Neither the Fifth Circuit's decision in *Schleppy* nor this court's decision in *Tilford* requires abandonment of the *"frag-*

*mented view"* of stock ownership. With respect to *Schleppy,* it is our view that *Foster* cannot be relied on for the proposition that a stock surrender requires the basis of the retained stock to be increased by the taxpayer's basis in the surrendered shares. In *Frantz* the majority and the dissent rejected *Schleppy's* interpretation of the decision in *Foster.* 83 T.C. at 176 n. 11, 190. We, like the Tax Court, read *Foster* as holding that the taxpayer was allowed an immediate loss measured by the basis of the stock surrendered less any resulting increase in the value of the stock retained. 9 T.C. at 934.

Furthermore, we do not believe that *Downer* can be distinguished as involving a transfer to third parties rather than a surrender to the corporation. In our view, the fundamental issue in both the third-party transfer cases and in the direct surrender cases is whether either type of transfer constitutes a closed transaction that results in a recognizable loss. The difference between a transfer for consideration and a direct surrender is relevant only for purposes of characterizing the resulting gain or loss. *Frantz,* 83 T.C. at 191 (Parker, J., dissenting).

Nor do we believe that the situation where a shareholder surrenders shares is indistinguishable from the circumstance where a shareholder gives cash or property to the corporation. When cash or property is given to the corporation, the corporation's capital is increased by the value of the property contributed. A true capital contribution represents an additional price paid for the stock. *See* B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders,* ¶ 3.14 (4th ed. 1979). The taxpayer's proportionate interest in the corporation remains unchanged and "the contribution will be reflected in an increased basis for his stock." *Id.* A non-pro rata stock surrender does not, however, represent an additional price paid for the stock. When a shareholder makes a non-pro rata surrender, corporate capital is not increased but the shareholder's proportionate percentage of ownership is reduced. *Smith,* 66 T.C. at 647; *Down-*

*er,* 48 T.C. at 91. As Judge Parker observed, we cannot disregard "the fact that a cash contribution does not change the shareholder's proportionate ownership interest in corporation vis-a-vis the other shareholders whereas the non-pro rata surrender of shares does." 83 T.C. at 191 (Parker, J., dissenting).

Our decision in *Tilford* is only applicable to section 83 transfers of property in connection with the performance of services. By enacting section 83, Congress altered the result reached in *Downer.* The legislative history of section 83 makes it clear that Congress intended to treat the transfer of stock by a shareholder to a corporate employee as a contribution of capital. Congress has not, however, altered the result reached in *Foster.* Congress is presumed to be aware of settled judicial construction and thus adopts that construction unless it affirmatively acts to change it. *See, e.g., Florida National Guard v. Federal Labor Relations Authority,* 699 F.2d 1082, 1087 (11th Cir.), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). We therefore conclude that Congress intended the shareholder who engages in a non-pro rata stock surrender to have the benefit of an immediate loss.

### V.

For the reasons stated, we REVERSE the decision of the Tax Court and REMAND for a determination of whether surrender of the stock by the taxpayers resulted in an increase in the value of their remaining shares. Barring such a finding, taxpayers are entitled to an ordinary loss deduction for the full amount of their basis in the surrendered shares.

JOINER, Senior District Judge, dissenting.

I respectfully dissent from the majority opinion, for I would affirm the decision of the Tax Court. The opinions of the Fifth Circuit in *Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir.1979), of the Second Circuit in *Frantz v. Commissioner,* 784 F.2d

119 (2d Cir.1986), and of this court in *Tilford v. Commissioner*, 705 F.2d 828 (6th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983), support this conclusion.

As indicated by the majority, *Schleppy* characterized two majority shareholders' non-pro rata surrender of slightly less than two percent of their stock to the issuing corporation as a non-deductible contribution to capital, rather than a deductible loss. The taxpayers' basis in the surrendered shares was therefore added to their basis in the remaining shares. 601 F.2d at 199. The court noted that a voluntary payment of cash to the corporation to bolster its financial position is considered a contribution to capital. The court found it "difficult to perceive why any distinction should arise if, instead of paying cash to the corporation, the shareholder surrenders part of his shares to bolster the corporation's financial health." *Id.* at 197. The Fifth Circuit then held that, in any event, the taxpayers had not demonstrated that they had suffered a genuine loss because of the surrender. The court observed that the taxpayers retained over 68% of the outstanding shares, thereby retaining corporate control while surrendering only a very small part of their holdings to improve the corporation's financial position. *Id.* at 198–99.

In its recent opinion in the *Frantz* case, the Second Circuit held that the taxpayer's non-pro rata stock surrender to a closely-held corporation, made to enhance the value of the taxpayer's continuing investment by improving the company's financial condition, was a contribution to capital rather than an ordinary loss. The taxpayer had surrendered his nonvoting preferred stock, but retained control of the corporation by continuing to hold 65% of the voting common stock. In deciding that the taxpayer had made a capital contribution, the Second Circuit emphasized that the stock surrender had not substantially reduced the taxpayer's net equity in the corporation. "Because the overall change in the taxpayer's interest in ABL was miniscule compared with the taxpayer's retained interest in the

company, no justification exists for treating the change in value as a capital loss, much less as an ordinary one." At 125.

As in the *Schleppy* and *Frantz* cases, the taxpayers here reduced their corporate ownership only slightly, in this case from 72% to 68%, and maintained their corporate control. Because the taxpayers' stock surrender left them in substantially the same position that they previously held, they have not suffered any sort of meaningful loss.

In *Tilford*, this court held that a taxpayer who sold stock at a loss to corporation employees to induce them to accept or continue employment made a capital contribution to the corporation, rather than suffered a deductible loss. *Tilford* found that Congress, by enacting Internal Revenue Code section 83, indicated that it viewed the transaction in two parts: the taxpayer's contribution of capital to the corporation, and the corporation's subsequent transfer of the stock as compensation to the employees. The majority distinguishes *Tilford* from the present case, stating that it merely affirms the validity of Treas.Reg. § 1.83–6(d) as an interpretation of section 83. While *Tilford* relies on these provisions in reaching its conclusion, the opinion suggests that its holding should be accorded a broader meaning. It states that the reasoning of the *Schleppy* opinion "further explicate[s]" its conclusion. 705 F.2d at 831. *Tilford* also finds its result consistent with early Supreme Court tax cases holding that a shareholder cannot deduct payments made for the benefit of his corporation. *Id.* at 830 (citing *Deputy v. Du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) and *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)).

The majority's attempt to distinguish *Tilford* from the present case presents a further difficulty. The majority's approach accords different tax treatment to a shareholder's transfer of stock to a third party for the benefit of the corporation, and a shareholder's direct surrender of stock to

the corporation for the same purpose. It makes little theoretical sense to distinguish between these two transactions. In both cases, the shareholder parts with stock to protect or enhance the value of his remaining investment. Both transactions are best viewed as a contribution to capital.

The majority relies heavily on its perceived need to apply the "fragmented view" of stock ownership to the present case. It views each share of stock as a separate investment. The majority holds that the taxpayers are entitled to recognize immediate gains or losses when surrendering shares to the issuing corporation, as the taxpayers have finally disposed of the particular shares surrendered. Whatever validity the "fragmented view" may have outside of the present context, it should not be applied here. Each share cannot validly be regarded as a separate investment that is separately terminated, when the taxpayers' sole motivation in disposing of certain shares is to benefit the other shares they hold. The taxpayers surrendered their shares only because their action affected the value of other shares, making a continuing investment in the corporation feasible. Viewing the surrender of each share as the termination of an individual investment ignores the very reason for the surrender itself. Particularly in cases such as this, where the diminution in the shareholder's corporate control and equity interest is so minute as to be illusory, the stock surrender should be regarded as a contribution to capital.

For the foregoing reasons, I would affirm the decision of the Tax Court.