601 F.2d 196
 79-2 USTC P 9551
 Ronald E. SCHLEPPY and Leonette R. Schleppy, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
David N. SMITH and Judith A. Smith, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 Nos. 76-4247, 76-4248.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 23, 1979.
 
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Section, U. S. Dept. of Justice, Stuart E. Seigel, Chief Counsel, Internal Revenue Service, Washington, D. C., Ernest J. Brown, Stanley S. Shaw, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant in both cases.
 Richard G. Holloway, Atlanta, Ga., for petitioners-appellees.
 Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellant in No. 76-4248.
 Appeals from the Decision of the United States Tax Court.
 Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 The government appeals from a decision of the Tax Court holding that the transfer by two taxpayers to a corporation of which they were the major but not sole shareholders, without consideration, to improve the financial condition of the corporation resulted in an ordinary loss to each of the taxpayers of the amount of his basis in the stock transferred.
 
 
 2
 The wives of the named taxpayers are named in the litigation solely because of the fact that their husbands and they filed joint returns for the years in question. The term "taxpayers" refers to the husbands only. Taxpayers were officers, directors and owners, before the transaction dealt with in this case, of 810,500 out of 1,155,833 shares of stock in the Communication and Studies, Inc. (C & S). As a result of a dispute between the corporation and a creditor holding convertible notes of the corporation in the face amount of $1,000,000, the directors of the corporation ratified an agreement to change the rate at which the creditor could convert its notes of C & S into shares of the corporation stock from $7 to $5 per share. In connection with this agreement, and, as the Tax Court found, in order to preserve the business of the corporation and to facilitate the agreement,[1] the taxpayers surrendered 57,142 of their 810,500 shares in C & S to the corporation. No other stockholders surrendered any stock.
 
 
 3
 On their tax returns for the appropriate years, the taxpayers sought to characterize their action as giving rise both to a long term capital gain measured by the difference between the taxpayers' cost in the shares and their fair market value at the time of the surrender and to a deductible ordinary loss in the amount of the fair market value of the shares. The Commissioner disagreed. He eliminated the capital gain and contended in the Tax Court that there was no loss upon the surrender of the shares to the corporation, claiming that such action was a contribution to the capital of the corporation, and not a taxable event.[2]
 
 
 4
 The Tax Court rejected both contentions. It held that the surrender of the shares by the taxpayers produced an ordinary loss measured by the amount of the taxpayers' cost basis in the shares surrendered. The Commissioner appeals from this decision. We reverse.
 
 
 5
 In order to prevail, the taxpayers must come within the provisions of 26 U.S.C. § 165 which provides that there shall be allowed a deduction if it is a loss, "incurred in the trade or business" or a loss "incurred in any transaction entered into for profit, though not connected with the trade or business." In the two cases, Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) and Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943), the Supreme Court has made it clear that a payment by a stockholder for the benefit of his corporation does not entitle him to a loss deduction as "ordinary and necessary expenses . . . in carrying on" the "trade or business" of the taxpayer. This leaves the question whether the taxpayers' surrender of stock here resulted in a loss "incurred in any transaction entered into for profit."
 
 
 6
 The taxpayers do not dispute the general proposition that voluntary payments by a stockholder to his corporation in order to bolster its financial position cannot be claimed as a loss. In such a situation, the amounts paid are added to the basis of the stock in the stockholder's hands. See Eskimo Pie Corp., 4 T.C. 669 (1945). It is difficult to perceive why any distinction should arise if, instead of paying cash to the corporation, the shareholder surrenders part of his shares to bolster the corporation's financial health. Nevertheless, the Tax Court here, by relying on Estate of William H. Foster, 9 T.C. 930 (1947), and comparing the facts here with J. K. Downer, 48 T.C. 86 (1967) drew such a distinction. In Foster, the court said:
 
 
 7
 Generally, a payment by a stockholder to the corporation, made to protect and enhance his existing investment and prevent its loss, is a capital contribution, rather than a deductible loss, and should be added to the basis of his stock. He increases his capital investment and the determination of gain or loss is held in abeyance until disposition of some or all of his stock. First National Bank in Wichita v. Commissioner, 46 Fed. (2d) 283, affirming W. R. Ranney, 16 B.T.A. 1399; B. Estes Vaughan, 17 B.T.A. 620. On the other hand, when a stockholder surrenders a part of his stock to improve the financial condition of the corporation he sustains a deductible loss, measured by the basis of the stock surrendered, less the resulting improvement in value of the stock retained. Commissioner v. Burdick, 59 Fed. (2d) 395, affirming 20 B.T.A. 742; Julius C. Miller, 45 B.T.A. 292; Peabody Coal Co. v. United States, 8 Fed.Supp. 845.
 
 
 8
 In the Downer case, which was similar to Foster except that there a major stockholder transferred stock to a third party in consideration for the third party's performing service for the corporation, the court undertook to present a basis for its distinguishing the surrender of stock by a stockholder and the payment of cash to, or on behalf of, his corporation. The court said:
 
 
 9
 Certainly, a unitary view of a shareholder's total investment in a corporation would confirm such an approach (equating the cash payment with a surrender of stock.) There is no necessary lack of logic in the proposition that a shareholder realizes no gain or loss until he has disposed of his entire stock investment.
 
 
 10
 Clearly, however, the evolution of the statutory and decisional framework has been on a fragmented, i. e., share by share, rather than a unitary view of a shareholder's investment. Thus, for example, a shareholder who sells a portion of his shares realizes taxable gain or loss measured by the difference between amount received and his cost basis in those shares even though dollarwise the transaction does not recoup his total investment.
 
 
 11
 Once the fragmented view is accepted as we think it must be it is possible to draw a distinction between the situation where a shareholder transfers cash and where he transfers part of his shares to a third party. In the former case, there is no change in his proportionate shareholder interest in the corporation only his investment has been varied. In the latter case, such a change admittedly takes place. 48 T.C. at 90.
 
 
 12
 The Tax Court's decision in Foster and Downer was also followed in a memorandum opinion in Duell v. Commissioner, 19 T.C.M. 1381 (1960). We find no Court of Appeals decision that determines the correctness of these decisions. We therefore write on a clean sheet.
 
 
 13
 We conclude that the Tax Court's reliance on these two early cases was misplaced. A careful reading of the Foster opinion shows that in spite of a statement of the "general" rule, the court in Foster actually decided the case in favor of the government by determining that the stock surrendered by Foster to his corporation resulted in increasing Foster's basis in his remaining shares when they were subsequently sold. The Foster court did not indicate why its holding was not in line with the general rule which it announced. As quoted above the Tax Court in the present case accepted the language of the opinion but apparently overlooked its holding. We accept its holding and reject the language.
 
 
 14
 We need not endorse or criticize the Tax Court's decision in Downer. The situation there was simply different. Downer had transferred a part of his stock to a third party in return for that party's agreeing to accept a position with the subject corporation. As a result of the transaction Downer had substantially less stock in the corporation than he previously owned. In this case, the surrender by Schleppy and Smith of somewhat less than two percent of their stockholdings to the corporation left them in substantially the same position that they previously held. Before the sale they owned 70.12 percent of the corporation's stock and after the transaction they owned 68.57 percent. Their net equity in corporate assets represented by their stockownership was not diminished by the entirety of the value of 35,000 shares which they transferred to the corporation, because their remaining shares were increased in value proportionate to their 68.57 percent remaining interest in the corporation, which included a 68.57 percent equity in the 35,000 shares. At most the net diminution was 31.43 percent of 35,000 shares or 11,000 shares, having a basis of only 23.5 cents per share. It was impossible when the transfer was executed to determine whether the taxpayers really did incur a loss as a result of it.
 
 
 15
 A major difficulty really stands in the way of considering this transaction a loss of any kind. After the surrender, the shares would either be taken under the option at $5 per share, which the Tax Court found was in excess of the value of the remaining shares at the time, or if the option was not exercised, then they would remain as treasury shares of stock which could be disposed of only for the benefit of the corporation, or in the event they were never reissued, then as previously indicated, the taxpayers' stockholdings would have increased in value to the extent of 68.57 percent of the book value of the surrendered shares.
 
 
 16
 While we do not need to reach the question whether a transfer by these taxpayers of the same number of shares to a third party in return for services to be performed by him for C & S would result in a loss, as the Tax Court held in Downer, we note only that there was no such transfer here. We have only a surrender of a very small part of the stockholdings of two stockholders controlling the majority of the corporation to the corporation itself to improve its financial position. We are simply unable to fit such a transaction into the language of a statute which authorizes a deduction for losses "incurred in any transaction entered into for profit, though not connected with the trade or business."
 
 
 17
 We hold, as did the Tax Court in Foster that the basis of the taxpayers in the shares which they surrendered is to be added to their basis in their remaining shares.
 
 
 18
 The judgment of the Tax Court is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Tax Court held:
 Since they had concluded that C & S could not reasonably expect to settle its dispute with Associates (the creditor) without agreeing to a reduction in the conversion rate of the note, they decided that the best solution for the protection of the business of C & S and their investment therein was to have C & S agree to lower the conversion rate for its stock and for them to supply from their large personal C & S stockholdings the needed stock to avoid a dilution of the C & S shares should Associates decide to convert the note to stock.
 
 
 [2]
 The government on this appeal avoids the use of the term "contribution to capital" since, of course, the surrender of a corporation's capital stock without consideration does not add to the corporation's capital or assets. However the term is used in a number of cases as a shorthand method of describing such surrender