**BENNETT PAPER CORPORATION AND SUBSIDIARIES, Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 82–1502.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1982.

Decided Feb. 16, 1983.

Donald H. Whaley, Clayton, Mo., for appellant; Whaley & McAuliffe, Clayton, Mo., of counsel.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney, Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

This is an appeal of a Tax Court decision relating to petitioner's 1974 tax return. The Commissioner disallowed deductions of petitioner for business expenses of a subsidiary and accrued profit-sharing plan earnings, and ordered a capitalization of certain expenses. We affirm the judgment, 78 T.C. 458, of the Tax Court.

Bennett Paper Corporation (Bennett) is the parent corporation of several subsidiaries, one of which owned King Island, Inc. (KI). KI was incorporated in Florida in July 1973 for the purpose of operating a marina. KI bought a marina but it proved to be unprofitable because of silting problems; Bennett decided to sell the marina and purchase another one nearby. In order to avoid KI's contingent liabilities, Bennett created a new corporation—Commodores International Yacht Club, Inc. (CIYC) as the subsidiary of another one of Bennett's subsidiaries. CIYC was formed in August 1974, and KI was eventually dissolved in 1975. CIYC incurred expenses for office space and other matters in 1974 and accepted application fees for a planned yacht club. In 1975 CIYC purchased a marina and opened a yacht club.

In 1974 Bennett, while employing an accrual basis of accounting, filed a consolidated tax return for all of its subsidiaries and deducted $45,370 for CIYC as ordinary and necessary business expenses pursuant to I.R.C. § 162(a). The Commissioner disallowed the deduction, saying that the 1974 expenses were preopening expenses which would have to be capitalized. The Commissioner also allocated to CIYC $12,500 of Bennett's $57,870 deduction for administrative expenses. The portion attributable to CIYC would have to be capitalized. The Commissioner also disallowed $129,475.51 of a $181,650.01 deduction Bennett made for accruals to a profit-sharing plan. Bennett was to make the $181,650.01 contribution in 1975, but the plan had a forfeiture provision which provided that earnings accrued to an employee in 1974 would revert to the company if that employee were no longer working for Bennett when the payment was made in 1975. Forfeitures were very rare. The Commissioner disallowed a portion of the deduction because the forfeiture provision made the contribution contingent and therefore not deductible. The Commissioner did not explain why he did not disallow the entire $181,650.01 deduction.

After the Commissioner's assessment of a deficiency, Bennett petitioned the Tax Court for review. A trial was held May 14, 1979 and almost three years later, on March 29, 1982, the Tax Court issued its opinion, finding for the Commissioner.

Bennett argues that CIYC's expenses should have been considered a current expense because CIYC was in essence a continuation of KI. The business operation and the employees of CIYC were the same as those of KI. Bennett argues that the only real difference was the location. CIYC was simply created to avoid KI's contingent liabilities.

Bennett in essence argues that the Commissioner had a legal duty to pierce the corporate veil with which Bennett had shrouded itself. Bennett here wants the best of both worlds; it wants CIYC considered a separate entity for purposes of

avoiding KI's liabilities but it wants CIYC and KI to be considered one entity for tax purposes. However, the Supreme Court has repeatedly made clear that a taxpayer who adopts a particular form of doing business cannot escape the tax consequences of that chosen form. *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974); *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943); *Higgins v. Smith,* 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406 (1940); *Burnet v. Commonwealth Improvement Co.,* 287 U.S. 415, 418–19, 53 S.Ct. 198, 199, 77 L.Ed. 399 (1932). As the Supreme Court said in *Moline Properties,* "The choice of the advantages of incorporation ... require[s] the acceptance of the tax disadvantages" 319 U.S. at 439, 63 S.Ct. at 1134, *citing Burnet v. Commonwealth Improvement Co.,* 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed.2d 399.

Bennett relies on an unpublished district court opinion, *Playboy Clubs International, Inc. v. United States,* 37 A.F.T.R.2d 1304, 76–2 U.S.T.C. ¶ 9560 (N.D.Ill., Mar. 31, 1976), *aff'd in part, vacated in part, remanded in part in an unpublished order* (7th Cir., May 16, 1977). In *Playboy* the district court allowed deductions for expenses incurred by a subsidiary in the sale of memberships in the subsidiary's own new club. We hesitate to rely on an unpublished decision which was disposed of by an unpublished order. *See* 7th Cir.R. 35(b)(2)(iv) (prohibiting a federal court within the Seventh Circuit from citing an unpublished Seventh Circuit order). Furthermore, in *Playboy* the continuity of a single enterprise was shown by the fact that membership in the subsidiary's club entitled a person to membership in any existing clubs.

Bennett also relies on *Briarcliff Candy Corp. v. Commissioner,* 475 F.2d 775 (2d Cir.1973). In *Briarcliff* the taxpayer, a candy company which made most of its sales through its own urban retail outlets, decided to stem slumping sales by tapping the suburban market. The taxpayer did this by setting up franchises in suburban drug stores. The franchise division advertised extensively to encourage drug stores to sell taxpayer's candy. The Commissioner ruled that these advertising expenses would have to be capitalized. The retail stores remained the primary source of sales. The Second Circuit reversed on the basis that the expenditures were for the continuation of an existing business. Bennett is in a different position from the taxpayer in *Briarcliff.* KI completely abandoned its business, while the *Briarcliff* taxpayer was a continuing corporation which merely expanded its existing business.

Furthermore, CIYC and KI were not so similar that one would have to call CIYC's existence a sham. *See Moline Properties,* 319 U.S. at 439, 63 S.Ct. at 1134; *Higgins,* 308 U.S. at 477, 60 S.Ct. at 357. The CIYC marina was at a different location and operated under a different name. Apparently the equipment at the KI location was not transferred to the CIYC location. In fact, the main similarity between the two operations appears to be the concept rather than anything tangible. It was within the Commissioner's discretion to consider CIYC a separate entity from KI.

Bennett argues alternatively that even if CIYC were a separate entity, it was already in business in 1974 and was therefore entitled to the deduction. CIYC received approximately $5,000 in application fees for the yacht club in 1974 although the club did not begin operations until 1975.

▪ The Commissioner correctly concluded that CIYC was not in business in 1974. CIYC did not have facilities or equipment in 1974 to operate a marina or a yacht club. CIYC could not be considered in the business of selling the applications, because CIYC listed the money from application fees as liabilities rather than as income. It did so because CIYC was obligated to return the fees if the yacht club never opened. Applicants did not receive anything for the application fees, such as reciprocal membership privileges in another club.

▪ Bennett also complains of the Commissioner attributing to CIYC $12,500 of Bennett's $57,870 deduction for adminis-

trative expenses. The expenses attributed to CIYC had to be capitalized. Bennett argues that the assessment was arbitrary and unsupported by any evidence whatsoever. However, the burden of proof is on the petitioner in Tax Court to show his right to a claimed deduction. *Estate of Luehrmann v. Commissioner,* 287 F.2d 10, 15 (8th Cir. 1961); *Rockwell v. Commissioner,* 512 F.2d 882, 886 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Perry v. Commissioner,* 392 F.2d 458, 461 (8th Cir. 1968); Tax Ct.R. 142(a). Bennett failed to meet its burden to justify the deduction, and therefore the Commissioner's determination will be upheld.

Bennett's final argument is that the Commissioner erred in not allowing a deduction for Bennett's accruals to a profit-sharing plan. The Commissioner refused to allow the deduction because the forfeiture provision made the accrued liability a contingent liability, and an accrual basis taxpayer cannot deduct contingent liabilities. Bennett argues that forfeitures were so rare they were *de minimis* and therefore the Commissioner should not have considered the accrued contribution contingent. Over a five-year period, forfeitures amounted to two-tenths of one percent of the contributions to the plan. In 1974 there were $364,274.06 in profit-sharing plan earnings (of which all but $181,650.01 was paid in 1974), and only $477.75 was forfeited. The rule is clear that for an accrual basis taxpayer "an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.461–1(a)(2); *Brown v. Helvering,* 291 U.S. 193, 200, 54 S.Ct. 356, 359, 78 L.Ed. 725 (1934); *Bolling v. Commissioner,* 357 F.2d 3, 8 (8th Cir.1966). The events necessary to fix the liability would not occur until 1975. *See Brown,* 291 U.S. at 200, 54 S.Ct. at 359. An example of a situation where the liability is fixed but the amount is not fixed is when there is a dispute as to the amount owed for services rendered.

Treas.Reg. § 1.461–1(a)(2). In the instant case the liability is not fixed until all the conditions for payment are met, including the employee remaining an employee until the payment is made.

Although forfeitures were rare, there is no question that they did occur and therefore Bennett's liability was not fixed until the end of 1974. While it may be appropriate and conceivably more reasonable for the Commissioner to adopt a rule considering liability fixed if forfeitures are extremely rare, we can find no authority which requires the Commissioner to adopt such a rule. The forfeiture provision in this case is different from the forfeiture provision in *Produce Reporter Co. v. Commissioner,* 18 T.C. 69 (1952), *aff'd on another issue,* 207 F.2d 586 (7th Cir.1973), where a deduction was allowed. In that provision, the forfeited contribution was distributed among other employees rather than given back to the employer. 18 T.C. at 71. The forfeiture provision in *Produce Reporter* did not affect the taxpayer's liability. The Commissioner's determination in this case is not arbitrary.

The judgment of the Tax Court is affirmed.