Donald A. JACKSON, Jr. and Marilynn Jackson, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 82–7028.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided June 20, 1983.

Duniway, Circuit Judge, concurred in part and dissented in part with an opinion.

Eliot S. Nahigian, Fresno, Cal., for petitioners-appellants.

Kenneth L. Greene, Washington, D.C., for respondent-appellee.

Before BROWNING, Chief Judge, DUNIWAY and PREGERSON, Circuit Judges.

PER CURIAM:

Donald and Marilynn Jackson petitioned the Tax Court for redetermination of income tax deficiencies, contending (1) they did not realize taxable income upon the transfer of a joint venture interest to their wholly owned corporation, and (2) they were entitled to deduct certain rental expenses incurred in connection with a condominium held for the production of income. The Tax Court found for the Commissioner on both issues. The Jacksons appeal. We reverse on the first issue, affirm on the second.

### I.

Donald Jackson owned a 50 per cent interest in a joint venture formed to construct an apartment project. On September 15, 1972, Jackson personally signed a promissory note for a short-term gap loan from Wells Fargo Bank to cover initial capital costs of the joint venture. On October 11, 1972, Jackson appointed his wholly owned corporation, Housing Specialists, Inc. (HSI), to act, with respect to the joint venture, as an agent for Jackson as an undis-

closed principal. On the same day, HSI and the other joint venturer obtained a construction loan from Gibraltar Savings and Loan Association. HSI appeared as a principal on the note. There was no evidence that Gibraltar was aware of the joint venture or of the fact that HSI was acting as an agent. Jackson guaranteed the loan personally. The Tax Court found that in the circumstances HSI was bound as a principal.

On January 3, 1973, Jackson abolished his agency relationship with HSI and assigned his half interest in the joint venture to HSI. Jackson completely severed his individual relationship with the joint venture. HSI assumed all of the incidents of ownership, including managerial control and the right to a share of the surplus on dissolution. The Tax Court held HSI became a partner in the joint venture for federal tax purposes, *see Evans v. Commissioner,* 54 T.C. 40 (1970), 447 F.2d 547 (7th Cir.1971), and, because HSI succeeded Jackson as a joint venturer, HSI assumed Jackson's half share of joint venture liabilities. The Tax Court concluded it was appropriate to treat the transfer as a sale under I.R.C. §§ 741 and 1001(a), (1954), the consideration being the share of the partnership liabilities assumed by HSI. *Crane v. Commissioner,* 331 U.S. 1, 12–14, 67 S.Ct. 1047, 1053–1054, 91 L.Ed. 1301 (1947); *Millar v. Commissioner,* 577 F.2d 212, 214–16 (3d Cir.1978); *Smith v. Commissioner,* 324 F.2d 725, 726 (9th Cir. 1963).

Jackson's gain was calculated on the premise that Jackson was relieved of his half of the partnership liabilities (the two loans). This reduction in liability was the "amount realized" by Jackson from the transfer. Jackson's basis in the partnership interest at the time of transfer was his half share of the two loans less his distributive share of a 1972 partnership loss, claimed by Jackson in his 1972 individual returns. Since the gain recognized on the transfers was the difference between the amount realized and Jackson's adjusted basis, Jackson's gain was the same as his share of the partnership loss deducted in his 1972 return.

Jackson contends that the transfer of his 50 per cent interest in the joint venture to his wholly owned corporation was a gratuitous contribution to capital and not a sale or other disposition resulting in an "amount realized" that would be taxable under section 1001(a) to the extent it exceeded Jackson's adjusted basis.

Jackson was primarily liable on the Wells Fargo loan, and secondarily on the Gibraltar loan, both before and after the transfer. The government concedes that "[t]he Commissioner does not contend, and the Tax Court did not hold, that taxpayer transferred either of these liabilities to HSI." The Tax Court recognized that HSI, "could not under state law, and did not assume primary liability for the loans." *See* Cal.Corp. Code § 15017. Jackson testified that he wrote Gibraltar requesting release from the personal guarantee agreement and that the request was denied. Jackson's continued personal liability on both loans distinguishes this case from rulings and cases cited by the Tax Court and the Commissioner. In neither *Crane,* nor *Millar,* did the taxpayer remain liable on the debt after the transfer. This liability entails the possibility that Jackson will, in fact, have to pay the loans from his own funds.

The Commissioner argues that, though Jackson's liability may have remained the same, the transfer relieved him of liability in the capacity of a joint venturer.

██ There is an "amount realized" when the taxpayer receives "a full quid pro quo," "valid consideration," his "money's worth," *International Freighting Corp. v. Commissioner,* 135 F.2d 310, 313 (2d Cir. 1943). *Crane* rests, as does the income tax system as a whole, on the concept of gain. Simmons, Nonrecourse Debt and Basis: Mrs. Crane Where Are You Now? 53 S.Cal. L.Rev. 1, 10 (1979). Since Jackson was relieved of no liability and received neither money, property nor other economically significant consideration in exchange for his interest in the joint venture, the requirements of section 1001 for a taxable transfer were not met. *Cf. Hirst v. Commissioner,* 572 F.2d 427, 430–31 (4th Cir.1978) (en banc) (taxpayer accrued no economic gain after transfer of property to donee).

■ The same reasoning undercuts the Commissioner's reliance upon the provisions of I.R.C. § 741. There has been no "sale or exchange" of a partnership interest when the transferor partner receives nothing of economic significance.

■ The Commissioner argues Jackson's transfer of his joint venture interest should be treated as a transfer to a controlled corporation within the meaning of I.R.C. § 351, and that gain should be recognized under I.R.C. § 357(c). We assume section 351 applies even though no exchange of stock occurred because the transfer was to a wholly owned corporation. *See Commissioner v. Morgan,* 288 F.2d 676, 680 (3d Cir.1961); *but see Abegg v. Commissioner,* 50 T.C. 145 (1968) *aff'd,* 429 F.2d 1209 (2d Cir.1970). But section 357(c) would apply only if the liabilities assumed, plus liabilities to which the property was subject, exceeded the adjusted basis of the property. The Tax Court found that HSI could not and did not assume Jackson's liability on the loans, and Jackson's interest in the partnership transferred to HSI was not subject to any other liability.

The Commissioner argues that if gain is not recognized from the transfer of Jackson's interest in the joint venture, the deduction Jackson took in his 1972 return for his distributive share of the joint venture loss in that year will never be recaptured and taxed. *See Crane v. Commissioner,* 331 U.S. at 15, 67 S.Ct. at 1055. But the deduction will reduce Jackson's basis in his stock in HSI and therefore will increase the taxable gain or reduce the loss realized when the stock is sold. *Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir.1979).

## II.

On November 30, 1973, Jackson acquired a 50 per cent interest in an apartment unit of the Spindrift condominium development at Shell Beach, California. On his personal returns for 1973 and 1974 Jackson claimed net losses in connection with the maintenance and operation of the unit on the premise that the unit was held for the production of rental income. The Commissioner and the Tax Court disallowed the deduction except for interest and state taxes on the ground that the apartment was not held for the production of income. The issue presented is whether the Tax Court's determination that Jackson did not acquire and maintain the apartment primarily for profit is clearly erroneous.

As the court noted:

Jackson testified that the purchase of the condominium was, in part, motivated by the desire to please his business client. This factor alone is not a persuasive indication of a primarily business related purpose. . . .

The Commissioner argued that Jackson did not thoroughly investigate the profit potential before purchasing the condominium and, after purchasing the unit, expended little effort to rent it. The Tax Court agreed:

Petitioners expended little effort to rent their apartment. Advertising was minimal or nonexistent. There was evidence of business dealings with only one broker, Louise Hurley. Hurley made clear that her efforts would be limited to a short period of time, and she ended rental agent services to petitioners soon after they started. Petitioners were free to occupy the unit for their personal use at any time.

The Tax Court pointed to the absence of profit in 1973 and the minimal rental received during the three weeks the unit was rented in 1974. The Tax Court noted "[a]lthough absence of a profit does not necessarily determine whether property is held for profit, petitioners must in good faith have expected a profit," and found insufficient evidence to show such an expectation. Jackson himself testified that he "lowkeyed it on the rental" after Hurley said she would no longer represent him because of the objections of owners of other units in that project. Jackson did not wish to undermine his relationship with project residents since his firm represented their association as well as the developer who still had units to sell.

■ In sum, Jackson's primary purpose in purchasing the condominium was to please his client, the developer. Jackson

elected not to sell his unit because the developer had a significant number of units unsold, and Jackson wished to avoid competing with his client. Jackson also sought to please his client by not renting the unit against the wishes of the development's permanent residents. It was not clearly erroneous to find that Jackson did not establish a good faith expectation of profit, and therefore did not hold his half interest in the condominium for the production of income during 1973 and 1974.

Affirmed in part, reversed in part, and remanded.

DUNIWAY, Circuit Judge (concurring and dissenting):

I concur in part II of Judge Browning's "per curiam" opinion. I dissent from part I.

In my opinion, the tax court, in its Memorandum Decision, Tax Ct.Mem.Dec. (P–H) ¶ 81,594 (1981), correctly held that Jackson received a capital gain in his convoluted dealings between himself and his wholly-owned corporation, HSI.

As the tax court saw it, the joint venture became liable to Jackson in an amount equal to the loans Jackson received and passed on as contributions to the venture. There is ample evidence to support the conclusion that the venture intended to assume such an obligation, even if it was not to become primarily liable to Wells Fargo or Gibraltar. For example, the joint venture agreement states, in § 1.17, that it is understood that the venture will repay the loan from Wells Fargo; that loan is reflected as a liability on the venture's 1972 tax return; and the venture actually repaid the loan in 1973. The venture agreement similarly stated that the Gibraltar loan was on behalf of the venture.

The finding by the tax court that the venture, through collateral agreements, agreed to repay the loan amounts, is not clearly erroneous. And because the venture had agreed to repay the loan amounts, Jackson was obligated by his status as a partner in the venture. This obligation is separate from his obligation to Wells Fargo and to Gibraltar; it is an obligation as a partner to repay the contributors to capital, i.e., to repay himself, HSI, and LEI.

It follows that if HSI assumed this share of Jackson's partnership liabilities, he received a benefit. Thus, although he was not relieved from his primary and secondary obligations to Wells Fargo and Gibraltar—only the banks could do that—he was relieved from his obligation as a partner under the venture's collateral agreement to fund the loan repayments.

I would affirm the entire judgment of the tax court.