ESTATE OF Charles A. JUDEN, Charles A. Juden, Jr., Personal Representative and Cleo M. Juden, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 87–2380.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1988.

Decided Jan. 20, 1989.

John L. Oliver, Jr., Cape Girardeau, Mo., for appellants.

Robert L. Baker, Washington, D.C., for appellee.

Before HEANEY,* Circuit Judge, ROSS, Senior Circuit Judge, and HILL,** Senior U.S. District Judge.

ROSS, Senior Circuit Judge.

The Estate of Charles A. Juden and Cleo M. Juden (Taxpayers) appeal from a decision of the United States Tax Court finding Taxpayers liable for an income tax deficiency in the amount of $78,599 for the taxable year 1979. On appeal the Taxpayers argue first that a taxable event never occurred, and second, even if a taxable transaction had occurred, the tax deficiency was based on the Tax Court's erroneous determination of the Taxpayers' basis in the property sold. After considering the briefs, record and arguments of the parties, we affirm the decision of the Tax Court.

I.

The relevant facts are undisputed. In October 1973, Taxpayers borrowed $750,-000 from Kansas City Life Insurance Com-

---

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

** The HONORABLE IRVING HILL, Senior United States District Judge for the Central District of California, sitting by designation.

pany and secured repayment of the indebtedness by executing a deed of trust encumbering 844 acres of land in the County of Cape Girardeau, Missouri. Some six years later, on November 19, 1979, Taxpayers' four children contracted to purchase 346 acres of the land encumbered by the Kansas City Life deed of trust. On the same day, Taxpayers executed a warranty deed, transferring the 346 acres to their children, and the warranty deed was recorded with the Cape Girardeau Recorder of Deeds on December 19, 1979. In consideration for the transfer of the property, according to the terms of the contract for sale, the children agreed to 1) assume the $720,000 outstanding indebtedness on the Kansas City Life promissory note, and 2) hold the Taxpayers harmless on that note. No further consideration was recited in the contract for sale. The Taxpayers filed their 1979 tax return as calendar year cash basis taxpayers and reported the sale of the 346 acres as a long-term capital gain. Two years later, on December 29, 1981, the children executed a warranty deed transferring the same 346 acres back to the Taxpayers. This warranty deed was also recorded.

On September 13, 1984, the Commissioner of the Internal Revenue Service asserted a $121,389 income tax deficiency against Taxpayers for the year 1979. The deficiency is attributable to the Commissioner's disallowance of a substantial amount of basis in one tract of property, known as U.S. Survey 176, which was sold to Taxpayers' children in November 1979. While the Taxpayers calculated the basis in Survey 176 to be $611,611, the Commissioner determined the basis amounted only to $6,480. The Commissioner's redetermination of the Taxpayers' basis in the property increased the capital gain by $585,558 and resulted in the $78,599 tax deficiency.

Taxpayers sought relief from the Commissioner's determination in the United States Tax Court. Upon review, the Tax Court determined that a taxable event had occurred as a result of the November 19, 1979 transfer, but reassessed the tax deficiency at a lesser amount based on the Tax Court's own valuation of Survey 176.

The Taxpayers now appeal the decision of the Tax Court arguing, first, that the Tax Court erroneously found that the transfer of the property constituted a taxable event because no consideration was given for the transfer and, second, that the Tax Court's valuation of the property and concomitant tax deficiency finding were clearly erroneous.

## II.

On appeal the Taxpayers assert two arguments for the proposition that a sale constituting a taxable event never occurred as a result of the 1979 agreement with their children. Although there are contracts, deeds, recordings and other clear evidence of transfer of realty ownership from Taxpayers to their children during 1979, the Taxpayers argue: (1) the contract for sale was not a valid enforceable contract because it was executory as it related to the children, for the children were to assume the payment of the debt underlying the deed of trust, but had not met that obligation during 1979, and (2) the contract was void or voidable on its face for want of mutuality.

According to the terms of the November 19, 1979 contract, the children agreed to assume the $720,000 outstanding indebtedness on the Kansas City Life promissory note and to hold Taxpayers harmless on that note in exchange for the transfer of the 346 acres of land. Although not stated in the written contract, the Taxpayers now argue that the children also agreed to obtain from Kansas City Life the discharge of Taxpayers from the note and deed of trust and to release from the deed of trust acreage which was not covered by the contract for sale. The Taxpayers now argue that because the children failed to obtain either the Taxpayers' discharge from the note or the release of additional unrelated acreage from the deed of trust, they received no economic benefit or legally sufficient consideration as a result of the purported sale to their children and therefore no "sale or other disposition" constituting a taxable transaction occurred.

The Taxpayers' argument is without merit. The economic benefit or amount realized was the assumption by the Taxpayers' children of the outstanding $720,000 indebtedness on the Kansas City Life promissory note. A buyer's assumption of a seller's mortgage obligation has long been considered part of the proceeds or amount realized from a sale. *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). "The sale or other disposition of property that secures a recourse liability discharges the transferor from the liability if another person agrees to pay the liability (whether or not the transferor is in fact released from liability)." 26 C.F.R. § 1.1001–2(a)(4)(ii).[1]

The children's assumption of the mortgage constituted their promise to pay the underlying liability. When they entered into the 1979 agreement to assume the mortgage they unconditionally promised to pay and then became the ultimate obligor for the $720,000 of the balance of the mortgage obligation. *See Swaim v. United States*, 651 F.2d 1066, 1073 (5th Cir.1981). By the terms of the contract for sale and by Missouri law the children rendered themselves personally liable to the Taxpayers for the discharge of the mortgage debt. *Beauchamp v. North American Savings Assoc.*, 543 S.W.2d 536, 538 (Mo.Ct.App. 1976); *Nutz v. Shepherd*, 490 S.W.2d 366, 372 (Mo.Ct.App.1973). The children thereby relieved the Taxpayers of their primary responsibility to repay the sum they originally received and they therefore realized economic gain to that extent in 1979 within the meaning of I.R.C. § 1001(b). *Commissioner v. Tufts*, 461 U.S. 300, 312, 103 S.Ct. 1826, 1833–34, 75 L.Ed.2d 863 (1983).

Taxpayers' reliance on *Jackson v. Commissioner*, 708 F.2d 1402 (9th Cir.1983) is unfounded. *Jackson* involves a series of transactions involving Jackson, his wholly owned subsidiary (HSI), and a joint venture in which Jackson owned a 50 percent interest. Briefly, Jackson assigned his interest in the joint venture to HSI, which in turn assumed all of Jackson's rights and responsibilities as a joint venturer. Consequently, the Tax Court held that because HSI succeeded Jackson as a joint venturer, HSI assumed Jackson's half share of joint venture liabilities as well. The Tax Court concluded it was appropriate to treat the transfer as a sale under I.R.C. §§ 741 and 1001(a), the consideration being the share of the partnership liabilities assumed by HSI. The Ninth Circuit reversed the Tax Court's holding finding that Jackson had not transferred his liabilities to HSI, in fact he was prevented from doing so by California law. *See* Cal.Corp.Code § 15017. The court concluded, because Jackson was neither relieved of liability nor received anything of economic significance in exchange for his interest in the joint venture, the requirements of section 1001 for a taxable transfer were not met.

*Jackson* is factually inapposite to the case before us. Here, the consideration providing the basis for the contract for sale was the children's express agreement to assume the debt. Unlike *Jackson*, there is no statutory provision preventing such assumption.

In rejecting Taxpayers' argument that a sale did not occur, we note as important the fact that the Taxpayers reported the sale of the 346 acres as long-term capital gain on their 1979 tax return. When it is the taxpayer who attempts to disavow his own transaction, he "may have less freedom than the Commissioner to ignore the transactional form that he has adopted." *Bolger v. Commissioner*, 59 T.C. 760, 767 n. 4 (1973). The Supreme Court "has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not." *Commissioner v. National Alfalfa Dehydrating &*

---

1. Although section 1.1001–2(a)(4)(ii) was issued in 1980, after the taxable year in question, the regulation is presumed to be retroactive unless otherwise specified by the Secretary. Because no such limitation is made here and because its application to the instant case would not be an abuse of discretion, the regulation is applicable here. I.R.C. § 7805(b); *Becker v. Commissioner*, 751 F.2d 146, 150 (3d Cir.1985); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 979 (5th Cir.1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

*Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974); *see also Bennett Paper Corp. v. Commissioner*, 699 F.2d 450, 452 (8th Cir.1983).

We also reject Taxpayers' argument that the contract for sale was void for want of mutuality due to the cancellation clause in the agreement for sale. According to the terms of the contract, the children were unconditionally obligated to perform under the agreement from the time of its execution in November 1979 until April 1, 1980, and again thereafter until April 1st of each succeeding year. Because the right of cancellation was not unrestricted and absolute, the contract was not void for want of mutuality as the Taxpayers contend. "A bilateral contract is not rendered invalid and unenforceable merely because one party has the right to cancellation while the other does not." *Laclede Gas Co. v. Amoco Oil Co.*, 522 F.2d 33, 36–37 (8th Cir.1975).

### III.

■ The Taxpayers next argue that, assuming a taxable event had occurred, the Tax Court's decision must nonetheless be reversed given its erroneous and unsubstantiated determination of the fair market value of the 162 acres known as U.S. Survey 176, one of several tracts of the real estate subject to the November 19, 1979 transfer.[2] The Taxpayers argue that because of the erroneous fair market value determination the asserted tax deficiency against them is excessive.

The parties agree that the question of fair market value is one of fact and that our limited task in reviewing the Tax Court's valuation is to determine whether such a finding is clearly erroneous or not supported by substantial evidence. *See Hamm v. Commissioner*, 325 F.2d 934, 937 (8th Cir.1963), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964). An appellate court's power of review is "'straitly limited upon all issues of fact ... and that limitation is particularly narrow when the issue is one of value.'" *Estate*

of *Goodall v. Commissioner*, 391 F.2d 775, 786 (8th Cir.) *cert. denied*, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968) (quoting *Sisto Financial Corp. v. Commissioner*, 149 F.2d 268, 269 (2d Cir.1945). With this standard in mind, we now turn to the issue before us.

Fair market value is defined as "the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell." *Hamm v. Commissioner, supra*, 325 F.2d at 937. The fair market value of real property must reflect the highest and best use of that property on the relevant valuation day. Because Taxpayers in the instant case acquired their interest in the property through testamentary devise, their basis in the property is the fair market value of such property on the date of the decedent's death, November 10, 1944. *See* I.R.C. § 1014(a)(1). That the best and highest use of Survey 176 on November 10, 1944 was as a limestone quarry is not contested on this review. Rather, the Taxpayers' argument on appeal is that the Tax Court's valuation of the property at $1,000 an acre is clearly erroneous and not supported by substantial evidence. A review of the factual background is helpful in evaluating Taxpayers' claim.

On their 1979 tax return, the Taxpayers claimed a basis of $611,611 in Survey 176, or approximately $3,775 per acre. The Taxpayers' valuation was based on their belief that the best and highest use of the property was as a limestone quarry. The Tax Commissioner subsequently issued a statutory notice of deficiency against the Taxpayers valuing the property at only $6,480, or $40 an acre, based on the Commissioner's finding that the land's best and highest use was as a farm.

On review of the Commissioner's determination, the Tax Court agreed with Taxpayers that the fair market value of the 162 acres was most appropriately based on its potential as a limestone quarry. Fur-

---

**2.** The fair market values of the other tracts of land subject to the November 19, 1979 transfer are not in dispute.

thermore, the Court accepted Taxpayers' own calculation that the depth of commercial limestone approximated 100 feet. The Tax Court, however, rejected the Taxpayers' proposed valuation in full because the Taxpayer had valued the property as if it were operating or operable as a quarry. Instead, the Court discounted the proposed valuation and assessed the property at $1,000 an acre based on several factors including, 1) evidence in the record that a fault runs through Survey 176 which may have contaminated or affected the marketability of the limestone, 2) the amount of overburden needed to be removed in order to permit quarrying, 3) evidence in the record of the relatively limited access to highway and railroad transportation as compared to other quarries in 1944, and 4) the failure of Taxpayers' proposed valuation to consider start-up costs which would be required in operating a quarry. These factors, according to the district court, affected the market value of the property.

After a review of the record, we find the Tax Court's valuation reasonable in light of the evidence presented and accordingly we reject Taxpayers' argument that such a finding was either clearly erroneous or not supported by substantial evidence. "Valuation * * * is necessarily an approximation * * *. It is not necessary that the value arrived at by the trial court be a figure as to which there is specific testimony if it is within the range of figures that may properly be deduced from the evidence." *Hamm v. Commissioner, supra,* 325 F.2d at 940–41 (quoting *Anderson v. Commissioner,* 250 F.2d 242, 249 (5th Cir.1957)).[3]

### IV.

In summary, this court holds that the Tax Court did not err in finding that a sale constituting a taxable event occurred as a result of the November 19, 1979 transfer of property from Taxpayers to their children. Furthermore, we find that the Tax Court's valuation of such property was neither clearly erroneous nor unsupported by substantial evidence. Accordingly, the decision of the United States Tax Court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, based on the totality of the circumstances, the taxpayer did not have a recognizable gain until two events occurred: (1) his children actually assumed the mortgage, and (2) the Kansas City Life Insurance Company agreed to release the taxpayer from his obligation on the note. Neither event occurred during taxable year 1979. Until these two events happened, any gain was fictional at best.

I also believe that the tax court erred in valuing the property at issue at only $162,000. The taxpayer testified at length as to the value of the property, and there is no substantial evidence in the record to contradict his testimony. We only have the theory expounded by the IRS. Moreover, no reason is shown in the record for rejecting the taxpayer's testimony as less than credible.

**3.** We have considered Taxpayers' other challenges to the Tax Court's decision, including their argument that the court failed to apply the proper burden of proof. We refrain from addressing these issues in light of our conclusion that the Tax Court's valuation was not clearly erroneous.