ESTATE OF MARIA J. EINSIEDLER, DECEASED, OTTO G. EINSIEDLER, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Einsiedler v. Commissioner
Docket No. 4461-91
United States Tax Court
T.C. Memo 1994-155; 1994 Tax Ct. Memo LEXIS 156; 67 T.C.M. (CCH) 2647; April 13, 1994, Filed *156 For petitioner: Raymond J. Farrell. For respondent: Steven W. Ianacone. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 259,651.81 deficiency in petitioner's Federal estate tax and a $ 64,912.95 addition to tax under section 6651(a)(1) for failure to timely file a return. Respondent also determined that petitioner improperly applied the special use valuation reduction of section 2032A. Petitioner concedes that respondent's determination regarding the special use valuation is correct and that petitioner is liable for an addition to tax for failure to timely file under section 6651(a)(1). The issues remaining for decision are: (1) The fair market value of the Route 34 property on February 20, 1986. We hold that it was $ 243,000. (2) The fair market value of the Creamery Road property on February 20, 1986. We hold that it was $ 268,680. The following summarizes the positions of the parties and our holding: Value on the: Estate
Notice of
Property
Tax Return
Deficiency
Petition
Route 34
$ 600,000
$ 600,000
$ 80,000
Creamery
Road
526,000
526,000
100,000
Total  1,126,000
1,126,000
180,000
Experts:
Our Property
Petitioner
Respondent
Holding Route 34
$ 80,000
$ 280,000
$ 243,000
Creamery
Road
100,000
410,000
268,680
Total  180,000
690,000
511,680
*157 References to decedent are to Maria J. Einsiedler. References to petitioner or to the estate are to her estate. References to the executor are to Otto Einsiedler. Section references are to the Internal Revenue Code in effect on the date of decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Decedent and Decedent's Estate
At the time of her death on February 20, 1986, decedent resided in Howell, New Jersey. Her estate is being administered in New Jersey. The executor of the estate, Otto Einsiedler, is decedent's son. He resided in Howell, New Jersey, when the petition was filed. Petitioner filed an estate tax return for the Estate of Maria J. Einsiedler on January 15, 1988. Petitioner elected February 20, 1986, as the valuation date for estate tax purposes. The estate reported a value on its tax return of $ 526,000 for the Creamery Road property and $ 600,000 for the Route 34 property. 2. Farmette Development in Colts Neck Township, Monmouth County
A farmette is an approximately 10-acre luxury property with a large home, typically accompanied *158 by a swimming pool, tennis courts, and riding stables. From 1980 to 1990, most property purchased in the township of Colts Neck, Monmouth County, New Jersey, was for use as residential development, such as farmettes. The largest number of building permits issued in Colts Neck during that period was in 1986. Although there are older farmettes on Route 34, most of the new farmettes are on small roads instead of highways. Any improvement to property in Colts Neck that involves changing the size of the foundation of an existing structure requires zoning approval. Colts Neck zoning rules require farmettes to abut a street and have a 50-foot-wide right-of-way with 36 feet of paved roadway to allow access for emergency vehicles. The Colts Neck Board of Adjustment can grant a variance from these requirements if an adjoining landowner refuses a reasonable offer to purchase a 50 foot right-of-way. 3. Route 34 Property
The Route 34 property is located on New Jersey State Highway 34, a two-lane highway, in the township of Colts Neck. Colts Neck is approximately 20 miles south of New York City, 50 miles northeast of Philadelphia, and 15 miles from the Atlantic Ocean. The Route *159 34 property consists of 27 acres and has an irregular shape. It is bounded by the highway on one side and a stream on the other. The property has a rolling topography and a pond. The Route 34 property is subject to a 200-foot setback zoning limitation and wetland restrictions which took effect in July 1989. There is a 1,200-square foot home in fair condition on the property. The property was being used as farmland on the valuation date, February 20, 1986. 4. Creamery Road Property
The Creamery Road property is also located in the township of Colts Neck. It has 44.78 acres and it does not front on a public road, but can be reached via two gravel roads which cross adjoining land. One of the roads is impassable. The other, which is 9.5 feet wide and 800 feet long, runs across a neighboring lot, known as Lot 2. That road provides access to the Creamery Road property, and also serves Lot 3, another landlocked tract which borders the Creamery Road property. There is a recorded easement, granted in 1864, across Lot 2 for the benefit of Jonathan Longstreet. There is another recorded easement, granted in 1922, across Lot 2 for the benefit of Susan Campbell, who was the *160 owner of Lot 3. Several structures are located on the Creamery Road property, including barns and an approximately 2,600-square foot house, all of which are in poor physical condition. The Creamery Road property was used as farmland on February 20, 1986. OPINION The issue for decision is the fair market value of the Route 34 and the Creamery Road properties on February 20, 1986. 1. Expert Witnesses
Both parties relied on expert witnesses. Both experts prepared expert reports and testified at trial. Anthony S. Graziano testified for respondent and Geoffrey D. Acolia testified for petitioner. The opinions of expert witnesses are relevant to the issue of value, but the opinions are weighed according to the experts' qualifications and other relevant evidence. See Anderson v. Commissioner, 250 F.2d 242, 249 (5th Cir. 1957), affg. T.C. Memo. 1956-178; Johnson v. Commissioner, 85 T.C. 469, 477 (1985); Chiu v. Commissioner, 84 T.C. 722, 734 (1985). We may accept or reject expert testimony according to our own judgment, Helvering v. National Grocery Co., 304 U.S. 282 (1938), *161 and we may be selective in determining what parts of an expert's opinion, if any, we will accept. Parker v. Commissioner, 86 T.C. 547, 562 (1986). a. Anthony S. Graziano
Anthony S. Graziano (Graziano), respondent's expert, appraised the Route 34 property at $ 280,000 and the Creamery Road property at $ 410,000. Graziano believed that the highest and best use of both properties was as residential property. Graziano reached this conclusion because virtually all land sold in Colts Neck in 1986 was sold for that purpose and there were no legal or physical impediments to developing the properties, other than questions related to securing an access road to the Creamery Road property which would be approved by the Colts Neck Board of Adjustment. Graziano believed that such access could have been purchased for $ 10,000 to $ 15,000. In valuing the properties, Graziano considered sales of property which he believed were comparable. His valuation of the Route 34 property was based on developing it into two farmettes. His valuation of the Creamery Road property was based on developing it into one farmette. b. Geoffrey D. Acolia
Geoffrey D. Acolia *162 (Acolia), petitioner's expert, appraised the Route 34 property at $ 80,000 and the Creamery Road property at $ 100,000. Acolia concluded that the highest and best use of the Route 34 property was agricultural. He believed that wetland and setback limitations restrict the amount of land which could be used to build the amenities normally accompanying a farmette, such as a pool, stable, and tennis court. Acolia stated that, although the property could be zoned for residential use and divided into two farmettes, it would be very difficult to market the property as farmettes without traditional farmette attributes, especially since the property is located on a State highway. In evaluating the highest and best use of the Creamery Road property, Acolia gave great weight to his inability to find a recorded easement for the benefit of the property and the difficulty he perceived in expanding the 9.5-foot road to meet zoning standards. Based on the lack of access, he concluded that the highest and best use of the property was agricultural. Acolia used the cost method, comparable sales, and the income capitalization method to value the properties. 2. Fair Market Value of the Properties
*163 A decedent's gross estate includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Sec. 2031(a). For purposes of section 2031(a), "value" means "fair market value," defined as the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. Fair market value is a question of fact to be determined from the entire record. Lio v. Commissioner, 85 T.C. 56 (1985), affd. sub nom. Orth v. Commissioner, 813 F.2d 837 (7th Cir. 1987). While we must consider the entire record, we have broad discretion to decide what facts are most important in reaching a decision because "finding market value is, after all, something for judgment, experience and reason". Colonial Fabrics, Inc. v. Commissioner, 202 F.2d 105, 107 (2d Cir. 1953), affg. a Memorandum Opinion of this Court dated Jan. 22, 1951. The fair market value of property must reflect the highest and best *164 use of that property on the relevant valuation date. Estate of Juden v. Commissioner, 865 F.2d 960, 963 (8th Cir. 1989), affg. T.C. Memo. 1987-302. To decide the fair market value of the two properties at issue here we will first decide the highest and best use of the land and then review sales of comparable property. a. Highest and Best Use
Petitioner contends that the highest and best use of the Route 34 property is agricultural. We disagree. Petitioner argues that the 200-foot setback requirement makes constructing a typical farmette difficult and that the location of the property on a State highway does not afford the privacy that a purchaser of a luxury property would want. We believe petitioner overstates the difficulty of marketing the Route 34 property. Colts Neck is close to metropolitan areas and the ocean. Most property sales in Colts Neck from 1980 to 1990 were for residential development. There are some farmettes located on Route 34. The property is large enough to allow a buffer from the highway. Contrary to Acolia's report, the wetland restrictions were not in effect in 1986. Because we believe *165 that the Route 34 property could be successfully marketed as residential property, we find that its highest and best use is residential. Petitioner contends that the highest and best use of the Creamery Road property is agricultural because, petitioner contends, no enforceable easement for the benefit of the property exists and a variance from the Colts Neck zoning requirements cannot be obtained. Petitioner's expert, Acolia, testified that the highest and best use of the property is residential if adequate access could be obtained. For the reasons stated below, we believe that access could be obtained. Thus, we conclude that the highest and best use of the Creamery Road property is residential. Petitioner argues that there is no recorded easement for the benefit of the Creamery Road property. Acolia searched the title of the Creamery Road property back to 1913 and found no recorded easement for the benefit of the property. He did not search the title of the Lot 2 property, the property over which the road to the Creamery Road property runs. Encumbrances of land, including easements, must be recorded so that they can be discovered upon a search of the title of the affected *166 land. N.J. Stat. Ann. sec. 46:21-1 (West 1989); Walter v. Introcaso, 52 A.2d 676, 678 (N.J. 1947). Therefore, Acolia's search of the title of the Creamery Road property does not convince us there is no easement over Lot 2 for the benefit of the Creamery Road property. Further, we are not convinced that the easement granted in 1864 did not benefit the Creamery Road property. Respondent argues that two items prove the existence of a recorded easement. The first is a township planning map that shows an easement for the benefit of the Creamery Road property. The planning map was approved and certified by the Planning Board of Colts Neck, the Township engineer, the Municipal Clerk, and the owner of Lot 2. The second is the recorded easement, granted in 1864, for the benefit of Jonathan Longstreet. Respondent claims that Mr. Longstreet was a prior owner of the Creamery Road property and that the easement to him is the easement shown on the planning map. In view of the evidence of the 1864 and 1922 easements, and the lack of persuasive evidence to the contrary from petitioner, we are not convinced that there is no recorded easement for the benefit *167 of the Creamery Road property. Petitioner argues that use of the road to the property is "permissive". Permissive use of a road requires the consent of the owner of the servient property and can be terminated at any time. Coggins v. Shilling, 103 A.2d 171, 174 (N.J. Super. Ct. 1954). However, an easement of necessity is created if a piece of property is divided and conveyed in such a way as to deny access to the purchaser of a parcel of the land. Krause v. Taylor, 343 A.2d 767, 768-769 (N.J. Super. Ct. 1975). The rights created by an easement of necessity are only as great as those needed when it is created, considering the size and use of the land which the easement serves, and the rights last only as long as the necessity which created it. Ghen v. Piasecki, 410 A.2d 708, 712-713 (N.J. Super. Ct. 1980). An easement of necessity attaches to the benefited property and is conveyed with it. Krause v. Taylor, supra at 769. If the Creamery Road property were initially subdivided from the Lot 2 property, it is accessible through an easement of necessity. *168 Id. Petitioner showed that the 9.5-foot road leading to the Creamery Road property was used with the permission of the owner of Lot 2 but did not address the existence of an easement of necessity. Therefore, we are not convinced that petitioner has no legal right to gain access to the Creamery Road property. Petitioner argues that a variance will not be granted to widen the existing road, even if an easement in fact exists. Petitioner relies on the testimony of Barbara Kornek (Kornek), who has been employed by the Colts Neck Board of Adjustment since 1987. Petitioner contends that Kornek testified that the Board of Adjustment would not grant a variance for development on the Creamery Road property. On the contrary, Kornek testified that the Board of Adjustment would consider granting a variance for construction on the Creamery Road property if enough land for adequate access could not be purchased for fair market value. Based on Kornek's testimony, we believe that, if needed, a variance would be granted for the Creamery Road property by the Colts Neck Board of Adjustment. Petitioner denies that the Board of Adjustment would be forced to grant a variance if the owner of *169 the Creamery Road property attempted and failed to purchase access at fair market value under Nash v. Board of Adjustment, 474 A.2d 241 (N.J. 1984). Respondent contends that a variance would be granted for the Creamery Road property if an action based on Nash were brought. To obtain a variance in reliance on Nash, a landowner must prove that he or she will suffer undue hardship if a variance is not granted and that the variance will not result in substantial detriment to the public good. Id. at 243. A landowner who meets these criteria is entitled to receive a variance. Id.
Petitioner's assertion that a variance for the Creamery Road property cannot be obtained is irrelevant if access can be purchased. Petitioner failed to convince us that access cannot be purchased. Petitioner offered evidence to show that access is in doubt because the owner of Lot 2 threatened to close the road and use the land for pasture. However, that evidence does not convince us that the owner of Lot 2 would refuse a fair market value offer for access sufficient to obtain approval by the Colts Neck Board of Adjustment for development *170 of a farmette. Based on the foregoing discussion, we believe that petitioner could secure access to the Creamery Road property for development of a farmette. Thus, we hold that the highest and best use of the Creamery Road property is residential. b. Comparable Sales
Generally, sales of comparable properties represent the best evidence of the fair market value of real estate. Estate of Spruill v. Commissioner, 88 T.C. 1197, 1229, 1233 (1987); sec. 20.2031-1(b), Estate Tax Regs. However, we may adjust values suggested by the parties' experts to account for any dissimilarities. Wolfsen Land & Cattle Co. v. Commissioner, 72 T.C. 1, 19-21 (1979). Petitioner's expert valued the properties by comparing them to property sales in a neighboring county that is not as close to metropolitan areas as Monmouth County. Those properties were used for agricultural purposes. Respondent's expert valued the properties by comparing them to sales of properties in Colts Neck for residential development. Because we hold that the highest and best use of the properties is residential, we use Graziano's valuation as a starting point *171 to decide the fair market values of the properties in issue. However, we believe Graziano failed to adequately consider some factors which would reduce the fair market values of the properties. For instance, Graziano did not know about the pond on the Route 34 property. At trial, he stated that the pond could force homes to be built on the property closer to the highway than his report suggested. In addition, we believe he did not give sufficient weight to the fact that the Route 34 property adjoins the highway. Graziano used the same comparable sales for the Route 34 and Creamery Road property. Two of the three comparable sales are located on small roads and have no topographical impediments to development. These two sales consisted of a 25.95 acre property sold for $ 400,000 ($ 15,414 per acre) and a 50.75 acre property sold for $ 630,000 ($ 12,414 per acre). He also considered a 24.46 acre property, located on a freeway and approved for housing development, that was sold for $ 230,000 ($ 9,403 per acre). While the 24.46 acre property is similar to the Route 34 property in that it is located on a freeway, it also adjoins a residential development, in contrast to the Route *172 34 property which is surrounded by farmland. All three properties are accessible from a main road. Graziano's appraisal of the Creamery Road property took into account the absence of a recorded easement, but we think he underestimated the effect of the issue of access on its value. Taking into account the foregoing, we hold that, on February 20, 1986, the fair market value of the Route 34 property was $ 243,000 ($ 9,000 per acre) and that the fair market value of the Creamery Road property was $ 268,680 ($ 6,000 per acre). To reflect the foregoing, Decision entered under Rule 155.