PETER R. FINK AND KARLA S. FINK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fink v. Commissioner
Docket No. 22865-80.
United States Tax Court
T.C. Memo 1984-418; 1984 Tax Ct. Memo LEXIS 251; 48 T.C.M. (CCH) 786; T.C.M. (RIA) 84418; August 7, 1984. *251 Mark K. Wilson, for the petitioners. Richard A. Witkowski, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' 1976 and 1977 Federal income taxes in the respective amounts of $131,885 and $133,826. After a concession by petitioners, the issues remaining for decision are whether they are entitled to loss deductions for their non pro rata surrender of stock to the issuing corporation, and, if so, the measure of such losses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Peter R. Fink (Mr. Fink) and Karla S. Fink (Mrs. Fink), husband and wife, resided in Grosse Pointe Farms, Michigan, at the time they filed their petition herein. Petitioners filed joint returns, Forms 1040, for 1976 and 1977, using the cash receipts and disbursements method of accounting. The returns were filed with the Internal Revenue Service Center in Cincinnati, Ohio. In 1964, petitioners and five other individuals purchased Frank Motor Homes, Inc., a Michigan *252 corporation that manufactured motor homes. During 1976 and 1977, Frank Motor Homes, Inc., was renamed Travco Corporation (Travco or the corporation). Beginning in 1964 and throughout the years in issue, Mr. Fink was the corporation's president and chief executive officer. At no time was Mrs. Fink involved in the corporation's management. In the early 1970's, Travco was a holding company conducting a variety of operations through subsidiaries. Travco manufactured motor homes through four operating subsidiaries. In addition, it operated a fiberglass parts and fiberglass bathtub-shower manufacturing business through a subsidiary (Richmond Products Company), and it manufactured seats, cushions, and fabrics for use in the interior of recreational vehicles through another subsidiary (Sanilac Company). In July of 1971, Travco formed a wholly-owned subsidiary, Gemini Corporation (Gemini), to furnish on a contract basis the interiors for motor homes manufactured by the GMC Truck and Coach Division of General Motors Corporation (hereinafter GMC Truck and Coach). To perform its contract with GMC Truck and Coach, Gemini entered into a long-term lease for a plant of approximately 225,000 *253 square feet. Gemini met its initial capital requirements by borrowing from the corporation and later, in October of 1973, by a $1,000,000 loan from GMC Truck and Coach, which was backed by Travco's credit. Throughout the 1970's, the largest part of Travco's business involved the manufacture and sale of motor homes, recreational vehicles and their component parts. The energy crisis of 1973 and 1974 caused a change in consumer attitudes towards motor homes and recreational vehicles, resulting in a decline in earnings and a weakening of Travco's financial condition. At the time of the energy crisis and following, Travco enjoyed a line of credit with Manufacturers National Bank of Detroit (Manufacturers National) of $3,000,000 to $3,400,000. Manufacturers National began to exert pressure on Travco for payment. Early in 1975, as a part of a new revolving credit agreement between Manufacturers National and Travco, Mr. and Mrs. Fink guaranteed payment of the corporation's borrowings against the line up to $200,000. Mr. and Mrs. Fink guaranteed the entire $200,000 because none of the other shareholders would guarantee any of it. For their guarantee, Travco issued petitioners stock *254 warrants for up to 200,000 shares at $1.00 per share, the number of shares to be determined by the number of dollars they guaranteed to Manufacturers National. From 1964 through 1976, Mr. Fink had invested approximately $835,000 in the stock of Travco and Mrs. Fink had invested approximately $1,060,000 in that stock. These stock investments were independent investment decisions. Mrs. Fink made her own decisions in all matters with regard to her own separate estate and did so regarding any investments she made in Travco. Each of petitioners' stock investments in Travco was made with an actual and honest objective of making an economic profit. During 1975 and the early part of 1976, GMC Truck and Coach drastically cut the production of its recreational vehicles, requiring Gemini to lay off the vast majority of its employees. Later, in 1976, GMC Truck and Coach ceased production of its recreational vehicles for an indeterminate period of time, leaving Gemini with substantial financial obligations. Because its own viability was threatened, Travco was forced to liquidate Gemini. Gemini or Travco or both had repaid approximately $212,000 of the $1,000,000 loan from GMC Truck and *255 Coach. On or about December 8, 1976, GMC Truck and Coach compromised the remaining principal balance, plus accrued unpaid interest of approximately $153,000, for payment by Travco of $225,000. Travco had borrowed this $225,000 from Mr. Fink, who himself had borrowed it from the City National Bank of Detroit (City National). Gemini had previously compromised the balance of its lease obligation on its plant. Because of Travco's liquidation of Gemini, its weakened financial condition, and market conditions generally, Manufacturers National became greatly concerned about the corporation's ability to repay its borrowings. During 1976, Manufacturers National put heavy pressure for payment upon Travco leaving it three choices--liquidating, finding a new lending bank, or obtaining new capital. During 1975 and 1976, Mr. Fink, on behalf of Travco, unsuccessfully sought additional capital for the corporation from various sources. He sought additional capital from another manufacturer of motor homes, from a Florida investment group, from a Canadian company, and from his brother and brother-in-law, all without success. Late in 1976, Travco was negotiating with City National to replace Manufacturers *256 National as its lender. City National required $900,000 of new capital for the corporation, agreeing to $700,000 of equity and $200,000 of subordinated debt. City National also required the subordination of the corporation's $225,000 debt to Mr. Fink from the settlement with GMC Truck and Coach and of approximately $869,500 of additional shareholder-held debt, as well as personal guarantees from petitioners. In an attempt to raise capital from sources other than its shareholders, Travco engaged an independent investment adviser, First of Michigan Corporation, to advise the corporation on how to attract outside investors and render an independent appraisal of the corporation's financial worth. In January of 1977, First of Michigan Corporation informed Travco that, without the infusion of new capital, its stock was worth about five cents a share. Travco's capital structure, as of December 11, 1976, was as follows: a. Common stock authorized--2,100,000 shares ($25 par value) b. Common stock outstanding--1,536,146 shares ($.25 par value) c. Indebtedness in the amount of $350,000 to Mrs. Fink, subordinate only to bank indebtedness. d. Indebtedness in the amount of $225,000 *257 to Mr. Fink, subordinate only to bank indebtedness. e. Indebtedness in the amount of $519,500 convertible for five years into Travco common stock at fifty cents ($.50) per share, with interest at the prime rate, payable quarterly, held as follows: Mr. Fink
$207,100
Mrs. Fink
212,400
Elise F. Jones (Mr. Fink's sister)
50,000
Elise M. Fink (Mr. Fink's Mother)
50,000
f. Guarantee to Manufacturers National bank of Detroit in the amount of $200,000 by Mr. and Mrs. Fink, with petitioners holding warrants to purchase 200,000 shares of Travco's common stock at $1.00 per share. On December 22, 1976, Mr. Fink surrendered without consideration 116,146 shares of Travco common stock to the corporation, shares having a total basis of $197,781.64. No other shareholder surrendered any shares. On January 6, 1977, Mrs. Fink surrendered without consideration 80,000 shares of Travco common stock to the corporation, shares having a total basis of $191,257.61. No other shareholder surrendered any shares. Travco held the shares surrendered by petitioners as treasury stock of zero value. At the time of the stock surrenders, the Travco stock was not worthless and had a value *258 of at least five cents a share. Petitioners surrendered a total of 196,146 shares to improve the corporation's financial position, to preserve its business, and to increase the attractiveness of the corporation to outside investors. Petitioners did not surrender stock as a part of any indirect transfer to a third party. The number of shares of stock that petitioners surrendered to the corporation was calculated to allow a new investor to acquire control of Travco by investing $700,000 in new equity to be issued in the form of $1.00 par value preferred stock convertible into common shares on a 2:1 ratio. [1] Petitioners' stock surrenders were made for the business reasons stated above and were not primarily tax motivated. *259 Before Mr. Fink's surrender of shares on December 22, 1976, after his surrender of shares on that date, and after Mrs. Fink's surrender of shares on January 6, 1977, Travco's stock was owned as follows: Relationship
Holdings Before
to
12/22/76
Name
Mr. Fink
Shares
%
Mr. Fink
802,300
52.2
Mrs. Fink
Wife
311,359
20.3
Elise F.
Jones
Sister
153,000
10.0
W. M.
Jones
Brother-in-law
62,500
4.1
Elise M.
Fink
Mother
33,333
2.2
Hilborn
Trust
4,000
.2
Jack
Freeman
97,850
6.4
David
M. Jones
8,333
.5
Wayne F.
Korn
5,125
.3
Thomas J.
Fisher
58,346
3.8
Totals
1,536,146
100.0
Relationship
Holdings After
Holdings After
to
12/22/76
1/6/77
Name
Mr. Fink
Shares
%
Shares
%
Mr. Fink
686,154
48.3
686,154
51.2
Mrs. Fink
Wife
311,359
21.9
231,359
17.3
Elise F.
Jones
Sister
153,000
10.8
153,000
11.4
W. M.
Jones
Brother-in-law
62,500
4.4
62,500
4.7
Elise M.
Fink
Mother
33,333
2.3
33,333
2.4
Hilborn
Trust
4,000
.3
4,000
.3
Jack
97,850
6.9
97,850
7.3
David
M. Jones
8,333
.6
8,333
.6
Wayne F.
Korn
5,125
.4
5,125
.4
Thomas J.
Fisher
58,346
4.1
58,346
4.4
Totals
1,420,000
100.0
1,340,000
100.0
*260 Travco had no preferred stock issued or outstanding on any of these dates. In early 1977, as a result of its negotiations with City National regarding a loan and a revolving credit agreement for $3,000,000, Travco offered to its stockholders a $700,000 issue of eight percent $1.00 par value preferred stock, each share convertible into two shares of common, and $200,000 in subordinated notes. Prior to offering the eight percent convertible preferred stock to the corporation's stockholders, Travco's directors passed a resolution authorizing the issuance of the preferred stock to Mr. Fink, Mrs. Fink, and Elise M. Fink (Mr. Fink's mother), if the other stockholders declined to subscribe to the offering. The offer was made to the existing shareholders on a pro rata basis to allow them to maintain their equity positions in the corporation, although Mr. Fink did not expect any of the other shareholders to subscribe to any of the preferred stock. Mr. Fink's judgment proved correct. On February 25, 1977, after being unable to sell the stock to other persons, Travco sold $700,000 of its convertible preferred stock to Mr. and Mrs. Fink (233,333 shares to each) and to Mr. Fink's mother, *261 Elise M. Fink (233,334 shares), and $200,000 of subordinated indebtedness due April 1, 1979 to the same stockholders (one-third to each). On or about April 14, 1977, Travco entered into a financing agreement with City National replacing Manufacturers National as the corporation's principal bank. Mr. Fink guaranteed repayment on the corporation's line of credit. During 1976, 1977, and 1978, Mr. Fink attempted unsuccessfully to sell or merge the corporation or components thereof. During 1978, 1979, and 1980, a substantial portion of Travco's assets were sold, its creditors were paid to the extent possible, and the corporation was liquidated. On their 1976 joint return, petitioners claimed as a miscellaneous deduction an ordinary loss of $197,781.64, representing the basis of the 116,146 shares of Travco common stock that Mr. Fink surrendered without consideration to the corporation. On their 1977 joint return, petitioners claimed as a miscellaneous deduction an ordinary loss of $191,257.61, representing the basis of the 80,000 shares of Travco common stock that Mrs. Fink surrendered without consideration to the corporation. In his statutory notice, respondent disallowed petitioners' *262 claimed loss deductions, determining that their surrender of tock to the corporation merely constituted contributions to its capital. OPINION Petitioners surrendered shares of Travco stock (which the corporation then held as treasury stock) to enhance the financial condition of the corporation by enabling an outside investor to acquire control by subscribing to Travco's contemplated offering of convertible preferred stock and exercising the privilege to convert the preferred into common stock. These stock surrenders were not primarily tax motivated. None of the other Travco shareholders surrendered any stock, and petitioners' overall percentage interest in the corporation was reduced from 72.5 percent to 68.5 percent. Petitioners claimed ordinary loss deductions for their non pro rata surrender of stock to the corporation in 1976 and 1977. Petitioners rely upon a long line of cases in this Court allowing an ordinary loss for disproportionate stock surrenders. See Smith v. Cmmissioner,66 T.C. 622 (1976), revd. sub nom. Schleppy v. Commissioner,601 F. 2d 196 (5th Cir. 1979); Estate of Foster v. Commissioner,9 T.C. 930 (1947); *263 Budd International Corp. v. Commissioner,45 B.T.A. 737 (1941), revd. on other grounds 143 F. 2d 784 (3d Cir. 1944); Miller v. Commissioner,45 B.T.A. 292 (1941); Wright v. Commissioner,18 B.T.A. 471 (1929), modified on another issue, 47 F. 2d 871 (7th Cir. 1931). [2] Respondent relies upon two recent appellate decisions denying loss deductions on disproportionate surrenders and similar dispositions. See Tilford v. Commissioner,705 F. 2d 828 (6th Cir. 1983), revg. 75 T.C. 134 (1980); Schleppy v. Commissioner,supra.In Frantz v. Commissioner, 83 T.C.     (filed August 7, 1984), this Court overruled the cases upon which petitioners rely and held that a non pro rata surrender of shares to the issuing corporation, like a pro rata surrender, is not an event that permits the recognition of loss and constitutes instead a contribution to the capital of the corporation. Thus, the taxpayer's basis in the surrendered shares must be added to his basis in his *264 remaining shares. Our opinion in Frantz v. Commissioner,supra, is dispositive here. [3]
Decision will be entered for the respondent.
Footnotes
1. In January 1977, following petitioners' surrender of the 196,146 common shares to Travco, there were 1,340,000 common shares outstanding. As discussed below, Travco intended to issue 700,000 shares of preferred stock, which, if converted into common, would give the investor voting control by giving him 1,400,000 common shares. While petitioners had $519,500 of corporate debt, convertible into common stock, because of petitioners' other debts and limited liquid assets, it would not have been practical for them to have converted that corporate debt into common stock. Therefore, there was little likelihood that petitioners could have regained voting control of the corporation had the 700,000 shares of preferred stock been purchased by an outside investor and converted into common stock.↩
2. See also Duell v. Commissioner,T.C. Memo. 1960-248; Payne Housing Corp. v. Commissioner,T.C. Memo. 1954-85↩. 3. While I still adhere to the views expressed in my dissenting opinion in Frantz v. Commissioner, 83 T.C.     (filed August 7, 1984), I of course accept the majority opinion as the law in this Court. Consistent with the views expressed in that dissenting opinion, I also think that the Sixth Circuit's Tilford opinion is not binding under our rule of Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971). Barring stipulation to the contrary, any appeal in this case will lie to the Sixth Circuit.